**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey Dean BECKER,
Defendant–Appellant.**

No. 89–50240.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1990.

Decided Nov. 20, 1990.

Carol A. Klauschie, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Brenda K. Sannes, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before REINHARDT and LEAVY, Circuit Judges, and KING\*, Senior District Judge.

REINHARDT, Circuit Judge:

## OVERVIEW

On December 2, 1988, Jeffrey Dean Becker was indicted on four counts of bank

\* Hon. Samuel P. King, Senior District Court Judge, United States District Court for the District of Hawaii, sitting by designation.

robbery in violation of 18 U.S.C. § 2113(a). He pled guilty to two of those counts. At his sentencing hearing on April 24, 1989, the other two counts were dismissed. Based upon Becker's prior criminal history, the district court found that he was a "career offender" as that term is used in United States Sentencing Commission, *Guidelines Manual* ("Sentencing Guidelines" or "Guidelines") § 4B1.1 (Jan.1988). Becker was then sentenced to two concurrent one hundred and twenty month sentences, to be followed by a five-year period of supervised relief.

Becker appeals his sentence, contending that the district court erroneously classified him as a career offender. He challenges the district court's finding that each of his two prior convictions under California law—for burglary of a residence during the daytime—counts as a "crime of violence" as that term is used in the Sentencing Guidelines. We affirm.

## FACTS AND PROCEEDINGS BELOW

When Congress created the United States Sentencing Commission, it required the Commission to ensure that the Sentencing Guidelines specify prison sentences "at or near the maximum term authorized" for certain repeat offenders. 28 U.S.C. § 994(h) (West 1988). To implement this policy, the Sentencing Commission enacted section 4B1.1 of the Sentencing Guidelines, which includes a table listing specific offense levels for career offenders. These offense levels are based upon the maximum statutory penalty that the defendant could receive for his crime. Section 4B1.1 specifies that if a career offender's other-

wise applicable offense level is lower than his career offender offense level, the career offense level applies. In addition, a defendant classified as a career offender is placed in the highest criminal history category.[1]

Section 4B1.1 also defines the term "career offender." Becker was sentenced under the 1988 version of the Guidelines. Section 4B1.1 provided in part then, as it does now:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The 1988 version of the Guidelines provided that the term "crime of violence" was to be defined as under 18 U.S.C. § 16. Guidelines § 4B1.2. Thus, under the 1988 Guidelines, a crime of violence was:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. (West 1988)[2]

The district court found that each of Becker's 1984 and 1985 California convic-

---

1. Section 4B1.1 fulfills the objective of 28 U.S.C. § 994(h) of providing a sentence at or near the statutory maximum. For example, a career offender convicted of an offense that carries with it a maximum statutory penalty of twenty-five years (or 300 months) will be given a career offender offense level of 34. This will result in a sentencing range of 262 to 327 months. *See* Guidelines Ch. 5, Part A (Sentencing Table).

As this case illustrates, designating a defendant a career offender can have a very large impact on the appropriate sentencing range. The district court found that without a departure from the Guidelines range, Becker's status as a career offender resulted in a sentencing

range of 210 to 262 months. Absent the career offender finding, the sentencing range would have been 57 to 71 months.

2. Section 4B1.2 was amended effective November 1, 1989. A "crime of violence" is now defined by section 4B1.2 itself as

any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or other-

tions for first degree burglary fit 18 U.S.C. § 16(b)'s definition of the statutory definition of a "crime of violence." Becker argues that this determination was erroneous because, in his view, to the extent that the definition of burglary in 18 U.S.C. § 16 includes burglary, it only includes common-law burglary—i.e., *nighttime* entry of the dwelling of another with intent to commit a felony. The California statute under which Becker's burglary convictions were obtained did not require the state to prove as an element of the offense that the burglary took place at night. *See* Cal. Penal Code §§ 459–460 (West 1988). Thus, according to Becker, his California burglary convictions are not crimes of violence under the career offender provision of the Sentencing Guidelines.

## DISCUSSION

■ The district court's determination that Becker is a career offender, as an interpretation of the Guidelines, is subject to de novo review. *United States v. Williams,* 891 F.2d 212, 214 (9th Cir.1989), cert. denied, — U.S. —, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990).

■ As a preliminary matter, we note that we do not look to the specific conduct which occasioned Becker's burglary convictions, but only to the statutory definition of the crime. We thereby adopt the so-called "categorical approach" that the Supreme Court has held is appropriate for determining whether someone is a career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924. *See Taylor v. United States,* — U.S. —, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990). *See also United States v. Sherbondy,* 865 F.2d 996, 1006–10 (9th Cir.1988).

The same considerations that led the Supreme Court to adopt the categorical approach under the Armed Career Criminal Act apply here. The *Taylor* Court first observed that the statutory language under interpretation there referred to " 'a person who ... has three previous convictions,' " (quoting 18 U.S.C. § 924(e)(1)), rather than a person who has committed three previous violent crimes. The Court went on to note that as a practical matter it would be difficult and potentially unfair to re-litigate each of a defendant's prior crimes as part of his sentencing determination. 110 S.Ct. at 2159.[3] Each of these rationales is applicable here. First, section 4B1.1 of the Guidelines, like the Armed Career Criminal Act, does not speak of the defendant's past conduct. Instead, it applies to a defendant who "has at least two felony convictions." In addition, the same practical considerations that led to the adoption of the categorical approach in *Taylor* are present here.

Our decision to employ a categorical approach does not by itself settle the question of what constitutes a "category" of criminal conduct. Here too, however, our prior interpretation of the Armed Career Criminal Act is instructive. In *United States v. Potter,* 895 F.2d 1231, 1237 n. 4 (9th Cir.), cert. denied, — U.S. —, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990), we noted that the categorical approach looks to the "particular provision of a statute" under which the defendant was convicted. *See United States v. Selfa,* 918 F.2d 749 (9th Cir.1990), petition for cert. filed, (U.S. Aug. 10, 1990) (applying the categorical approach in a case involving the career offender provisions of the Guidelines).

■ The particular provision of the California Penal Code under which both of Becker's first degree burglary convictions were obtained was section 460, which, during the relevant time period, provided that "[e]very burglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first

---

wise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. App. C. 137–39 (Nov.1989).

**3.** The third reason for adopting the categorical approach in *Taylor* was the legislative history of the Armed Career Criminal Act. Although that legislative history obviously does not bear on the interpretation of the Sentencing Guidelines, here the commentary to the Guidelines is instructive. The effect of the commentary is discussed below, *infra,* Part II.

degree." Cal. Penal Code § 460 (West 1988). Burglary was in turn defined generically by section 459 of the California Penal Code as entry into any of a variety of structures, vehicles, and vessels with the intent to commit a larceny or any felony.[4] The California courts have held that first degree burglary is burglary of a residence—a distinct and more serious offense than other burglaries. *See People v. Wilson*, 208 Cal.App.3d 611, 615, 256 Cal.Rptr. 422, 425 (1989). The distinction is based upon the higher risk to personal safety that residential burglaries create. *See id.* Since 1876, California law has not required that the entry be made in the nighttime for it to be deemed burglary. Cal. Penal Code Ann. § 459 (West 1988).

Thus, we are left with the question whether Becker's offense—the daytime entry of a dwelling with the intent to commit a larceny or any felony—constitutes a crime of violence as defined in 18 U.S.C. § 16.

## I

We begin our inquiry with the language of 18 U.S.C. § 16(b). It provides that a

"crime of violence" is any felony that inherently involves "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." First degree burglary under California law involves just such a risk. Any time a burglar enters a dwelling with felonious or larcenous intent there is a risk that in the course of committing the crime he will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal purpose or to escape apprehension.[5]

## II

The conclusion that daytime burglary of a residence was intended by the Sentencing Commission to count as a violent offense for sentence enhancement purposes is supported by the commentary to the Guidelines. Application Note 1 to U.S.S.G. § 4B1.2 (1988) states that "[c]onviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered." The Note draws the same distinction between residential and non-residential burglaries as California law. Residential burglaries are treated as

---

**4.** During the relevant period, section 459 provided:

> [e]very person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, "inhabited" means currently being used for dwelling purposes, whether occupied or not. A house, trailer, or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises.

Cal. Penal Code Ann. § 459 (West 1988).

**5.** California law does not require that the entry itself be illegal for a defendant to be convicted

of burglary. *See People v. Pendleton*, 25 Cal.3d 371, 382, 599 P.2d 649, 656, 158 Cal.Rptr. 343, 349 (1979) (explaining that "one may be convicted of burglary even if he enters with consent, provided he does not have an unconditional possessory right to enter"). However, we are unaware of any California case holding that a defendant may be convicted of first degree burglary where he entered the dwelling of another with the intent to commit a felony in cooperation with a lawful occupant of that dwelling, or where the lawful occupant was aware that the defendant intended to commit a felony. Thus, for example, we do not believe that the California courts would conclude that a stock trader who went to an associate's house to concoct an insider trading scheme would be guilty of first degree burglary, even though he entered with the intent to commit the felony of conspiracy to perpetrate a fraud. *See* Cal. Penal Code Ann. § 182(4) (West 1988). By defining first degree burglary as "burglary *of*" a dwelling, the language of section 460 implies that the intended felony must be committed *against* the property or person of the lawful resident. Thus, in every crime that we believe the California Supreme Court would consider first degree burglary, there is a substantial risk that force will be used *against* the person or property of a lawful occupant of the dwelling.

crimes of violence because, like California, the Sentencing Commission recognized the danger inherent in a residential burglary. The Note does not, however, distinguish between daytime and nighttime burglaries.

As the Supreme Court recognized in *Taylor*, the majority of states have departed from the common-law definition of burglary because "[t]he arcane distinctions embedded in the common-law definition have little relevance to modern law-enforcement concerns." 110 S.Ct. at 2155. The Court treated the distinction between daytime and nighttime burglary as one of these arcane distinctions. *See id.* at n. 7. The fact that Application Note 1 to section 4B1.2 does not distinguish between daytime and nighttime burglaries may well be due to the Sentencing Commission's recognition that the nighttime requirement has very little modern relevance. Although an argument can be made that nighttime residential burglaries are more dangerous than daytime residential burglaries because of the greater likelihood that the inhabitants will be home, residential burglaries carry with them significant risks to personal safety and valued personal property at all times.

### III

■ Nevertheless, Becker argues that because California has departed from the common law by deleting the nighttime requirement from its definition of burglary, first degree burglary does not constitute a crime of violence under 18 U.S.C. § 16. This argument fails. Even if we were to ignore the fact that the text of 18 U.S.C. § 16 and Application Note 1 to Guidelines § 4B1.2 draw no distinction between residential burglaries committed in the day and those committed at night, we would have to conclude that a daytime residential burglary is a crime of violence.

For the proposition that non-common-law burglary is not a crime of violence, Becker relies principally on an analogy with *United States v. Chatman*, 869 F.2d 525 (9th Cir.1989), where we held that Congress' use of the term "burglary" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii) only referred to common-law burglary. However, *Chatman* has been overruled by *Taylor*. *See United States v. Cunningham*, 911 F.2d 361, 362–63 (9th Cir.1990). In *Taylor* the Supreme Court held that a person has been convicted of burglary for purposes of an enhancement under 18 U.S.C. § 924(e)(2)(B)(ii), if he has been convicted of "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 110 S.Ct. at 2158.

There is even less reason to read a nighttime element requirement into the statute under construction here than there was in *Taylor*. At least the Armed Career Criminal Act uses the word "burglary" in its text.[6] Thus, the Supreme Court had to consider the possibility that when Congress used that term it meant only common-law burglary. By contrast, 18 U.S.C. § 16 mentions no specific crimes at all. It speaks only in descriptive terms of felonies that carry with them a substantial risk that force will be used. As we have stated, burglary of a residence—no matter what time of day it is committed—falls within this description.[7]

### IV

Finally, we reject Becker's contention that the legislative history of 18 U.S.C.

6. *18 U.S.C. § 924(e)(2)(B) defines "violent felony" for purposes of sentence enhancement as:*
   any crime punishable by imprisonment for a term exceeding one year ... that—
   (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
   (ii) is *burglary,* ... or otherwise involves conduct that presents a serious potential risk of physical injury to another.
   (Emphasis added).

7. We express no opinion as to whether convictions under the California burglary statute would qualify as "violent felon[ies]" for purposes of 18 U.S.C. § 924(e)(2)(B)(ii). *Cf. United States v. Bermudez,* 744 F.Supp. 217 (C.D.Cal. 1990) (holding that "burglary" as defined in section 459 of the California Penal Code does not contain all of the elements required by *Taylor* under 18 U.S.C. § 924(e)(2)(B)(ii)).

§ 16 demonstrates that daytime residential burglary is not a crime of violence. To the extent that such legislative history is relevant, it shows, contrary to Becker's suggestion, that Congress considered all burglaries to be crimes of violence. *See* S.Rep. No. 98–225, 98th Cong., 1st Sess. 307, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3847 (listing "burglary", without further qualification, as an offense that "would involve the substantial risk of physical force against another person or against the property").[8]

## CONCLUSION

The confluence of common sense and precedent lead to the conclusion that the unauthorized daytime entry of the dwelling of another with the intent to commit a larceny or any felony carries with it a substantial risk that force will be used against the person or property of another. Therefore, first-degree burglary under California law is a "crime of violence" for purposes of sentence enhancement under the career criminal provisions of the federal Sentencing Guidelines.[9]

AFFIRMED.

---

**8.** Becker also argues that because Congress made an abortive effort to define a federal crime of burglary that included a nighttime component before it passed what became 18 U.S.C. § 16, any subsequent references to burglary by Congress should be construed to require a nighttime component. We do not see why Congress' *failure* to define burglary as requiring a nighttime component should be read as an adoption of the common-law definition of burglary, rather than a rejection of that definition. In any event, since Congress did not even use the term "burglary" in 18 U.S.C. § 16, any prior understanding of that term is largely irrelevant here.

**9.** The government argues that Becker's first degree burglary convictions qualify as crimes of violence under the Guidelines on the basis of the particular conduct that led to those convictions. In *Taylor,* the Supreme Court noted that under the Armed Career Criminal Act a sentencing court may look beyond the statutory definition of the prior offenses "in a narrow range of

cases where a jury was actually required to find all of the elements of generic burglary [as shown by] the indictment or information and jury instructions...." 110 S.Ct. at 2160. *See also United States v. O'Neal,* 910 F.2d 663, 666 (9th Cir.1990) (holding that the defendant's conviction for second degree burglary under California law constituted a crime of violence under the Armed Career Criminal Act where the charging paper revealed that his actual conduct satisfied the *Taylor* test). Because we hold that first degree burglary under California law defines a crime of violence, we need not decide whether a narrow exception to the categorical approach identical to that used in *Taylor* is applicable in cases under the Guidelines as well, or whether under the Guidelines the sentencing court is precluded in all cases from inquiring into the actual conduct that resulted in a defendant's prior convictions. *Cf. id.* at 667 (leaving open the question whether the Guidelines ever permit the sentencing court to analyze the defendant's particular conduct in the offense for which he is being sentenced).