**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-4606**

———————

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

      v.

MARIO VASQUEZ AVILA, a/k/a Mario Sanchez, a/k/a Mario Vasquez,

                Defendant – Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (5:12-cr-00022-RLV-DSC-1)

———————

Argued: September 19, 2014      Decided: November 4, 2014

———————

Before KING, SHEDD, and AGEE, Circuit Judges.

———————

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge King and Judge Shedd joined.

———————

**ARGUED:** Michael E. Archenbronn, Winston-Salem, North Carolina, for Appellant. William Michael Miller, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anne M. Tompkins, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

———————

AGEE, Circuit Judge:

Mario Vasquez Avila ("Avila") appeals the thirty-seven month sentence he received after pleading guilty to illegal reentry in violation of 8 U.S.C. § 1326(a). On appeal, Avila does not challenge his conviction, but argues the district court committed reversible error at sentencing by concluding that his prior conviction for first-degree burglary under California Penal Code §§ 459 and 460(a) qualified for an eight-level sentencing enhancement. Avila further argues that the district court's explanation of its chosen sentence was insufficient. For the reasons that follow, we affirm the judgment of the district court.

I.

Avila, a native and citizen of Mexico, has a long history of illegally entering the United States and engaging in criminal activity while here. First unlawfully entering the United States in 1990, Avila was arrested for shoplifting and voluntarily returned to Mexico. After reentering again, Avila was arrested on multiple charges in California and ultimately convicted of assault and sentenced to one year in prison in 1993. At the conclusion of his sentence, he was removed to Mexico.

2

Reentering the United States almost immediately, Avila was arrested in 1994 in San Diego, California, and charged with three counts of first-degree robbery, one count of first-degree burglary, one count of assault with a deadly weapon, and one count of assault with a firearm. Upon a guilty plea to first-degree burglary, Avila was sentenced to twelve years in prison. Immigration officials again removed Avila to Mexico upon his release.

Avila again illegally returned to the United States and was twice arrested and convicted in North Carolina for driving while impaired, ultimately receiving prison sentences of thirty days and six months. Avila spent additional time in jail after a conviction for malicious conduct by a prisoner. For reasons not explained in the record, immigration officials were apparently unaware of Avila's presence in the North Carolina penal system.

Following his release from confinement in North Carolina, Avila assaulted a woman and a police officer, and made several threats against the officer's family. Avila was subsequently charged with two counts of simple assault and one count of communicating a threat in North Carolina state court.

This time immigration authorities did learn of Avila's pending charges and interviewed him on March 23, 2012. Avila lied during the interview, claiming that he was a United States citizen. After further investigation, authorities confirmed

3

that Avila was in the United States unlawfully. A federal grand jury subsequently indicted him for illegal reentry following an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). On October 10, 2012, Avila pled guilty to this charge without the benefit of a written plea agreement.

In preparation for sentencing, the United States Probation Office prepared a presentence investigation report ("PSR") which calculated Avila's total offense level at fourteen and his criminal history category at V, resulting in a guidelines sentencing range of thirty to thirty-seven months incarceration. In computing Avila's offense level, the PSR included an enhancement under U.S.S.G. § 2L1.2(b)(1)(C), which provides for an eight-level increase to the base offense level of any defendant who "previously was deported, or unlawfully remained in the United States, after . . . a conviction for an aggravated felony." Over Avila's objection, the probation office determined that his 1994 California conviction for first-degree burglary qualified as an aggravated felony.

At sentencing, Avila argued that his California burglary conviction should not qualify as an aggravated felony for the eight-level increase because it is not a crime of violence. The district court overruled Avila's objection and adopted the recommended guidelines range in the PSR. Avila also requested a downward variance based on his work history and treatment for

4

alcohol abuse while awaiting sentencing. The Government sought a sentence at the high end of the guidelines given Avila's repeated history of illegally entering the United States and committing violent crimes.

Applying "an individualized approach," the district court recounted Avila's personal characteristics and criminal history and explained that "taken together," they caused "a concern for . . . the safety of the public." (J.A. 25.) The district court then imposed a within-guidelines sentence of thirty-seven months' imprisonment.

Avila timely appealed, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

II.

In reviewing a sentence imposed by a district court, we apply an abuse of discretion standard. See Gall v. United States, 552 U.S. 38, 51 (2007). Generally, this requires a two-step analysis. United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). First, we review the sentence for "significant procedural error," "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to

5

adequately explain the chosen sentence[.]"  Gall, 552 U.S. at 51.

If there are no procedural errors, we proceed to consider the substantive reasonableness of a sentence, "taking into account the 'totality of the circumstances including the extent of any variance from the Guidelines range.'"  Pauley, 511 F.3d at 473 (quoting Gall, 552 U.S. at 51).  "[A]n appellate court is allowed to presume that a district court's chosen sentence is substantively reasonable if it is within a correctly calculated Guidelines range."  United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010) (citation omitted).

Avila raises two issues on appeal, both challenging the procedural reasonableness of his sentence.  First, he argues that the district court erred in classifying his first-degree California burglary conviction as an aggravated felony justifying an eight-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C).  Citing Descamps v. United States, 133 S. Ct. 2276 (2013), Avila asserts that his burglary conviction does not meet the definition of an aggravated felony because the California statute "lacks the element of an unlawful or unprivileged entry" and "defines burglary so broadly as to including shoplifting[.]"  (Appellant's Br. 10.)  Separately, Avila alleges the district court failed to conduct a sufficiently individualized assessment or address his "non-

6

frivolous argument for a below-guidelines sentence." (Appellant's Br. 13.) We address each argument in turn.

A.

Section 2L1.2 of the Sentencing Guidelines provides for an eight-level increase to the base offense level of any defendant convicted of illegal reentry who "previously was deported, or unlawfully remained in the United States, after . . . a conviction for an aggravated felony." U.S.S.G. § 2L1.2(b)(1)(C). Application Note 3 to § 2L1.2 provides that the term "'aggravated felony' has the meaning given that term in 8 U.S.C. 1101(a)(43)." Id. § 2L1.2 cmt. 3(A). That statute defines "aggravated felony" by listing a series of qualifying offenses, including, in relevant part, "a crime of violence (as defined in section 16 of Title 18)[.]" See 8 U.S.C. § 1101(a)(43)(F). "Crime of violence" is defined as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

7

Following this definitional trail, the district court determined that Avila's conviction for first-degree burglary under California law qualified as a "crime of violence" and therefore an "aggravated felony" for purposes of the eight-level sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(C). Avila asserts this conclusion was error, so we now consider whether Avila's California burglary conviction is indeed an aggravated felony under the enhancement.[1] See United States v. Perez-Perez, 737 F.3d 950, 952 (4th Cir. 2013) (noting that whether a prior conviction qualifies as a predicate offense for purposes of a guidelines enhancement is a question of law that we review de novo).

We employ a categorical approach to assess whether Avila's California burglary conviction is an aggravated felony, focusing on the elements of the statute of conviction rather than the conduct underlying the offense. See Descamps, 133 S. Ct. at 2282-83 (holding that courts must apply the categorical approach to statutes like California burglary "that contain a single,

---

[1] The Government did not raise any argument here or in the district court that Avila's plea to the indictment, listing both an 8 U.S.C. § 1326(a) and (b)(2) component, decides the sentencing enhancement issue. Accordingly, we do not address such an argument. See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 377 (4th Cir. 2012) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." (citation and internal quotation marks omitted)).

'indivisible' set of elements"); United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir. 2014) (en banc) ("As required by the categorical approach, our analysis is restricted to 'the fact of conviction and the statutory definition of the prior offense.'" (citation omitted)).[2]

Although the "aggravated felony" sentencing enhancement at issue here includes "burglary" as a qualifying offense, see 8 U.S.C. § 1101(43)(G), the parties agree that subsection does not encompass Avila's California burglary conviction because the California burglary statute is broader than the "generic" burglary offense as defined by the Supreme Court. See Taylor v. United States, 495 U.S. 575, 598 (1990) ("[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."); Descamps, 133 S. Ct. at 2293 ("Because generic unlawful entry is not an element, or an alternative element, of [California burglary], a conviction under that statute is never for generic burglary."). Accordingly, we must determine whether Avila's conviction for California first-degree burglary instead qualifies under the more generalized "crime of violence"

---

[2] The parties concur that the categorical approach applies here and there is no basis to utilize the modified categorical approach. We agree.

definition in 18 U.S.C. § 16. To the extent the statutory definition of California burglary has been interpreted by the California Supreme Court, "that interpretation constrains our analysis[.]" Aparicio-Soria, 740 F.3d at 154.

Avila's uncontested prior conviction for first-degree burglary under California law required proof of three elements: (1) entry into a dwelling; (2) that was inhabited at the time of the entry; (3) with the intent to commit a theft or any felony. See People v. Anderson, 211 P.3d 584, 589 (Cal. 2009). For purposes of this crime, a structure "need not be occupied at the time; it is inhabited if someone lives there, even though the person is temporarily absent." People v. Little, 142 Cal. Rptr. 3d 466, 471 (Cal. Ct. App. 2012) (citation and emphasis omitted).

We conclude that California first-degree burglary qualifies as a crime of violence under the residual clause in 18 U.S.C. § 16(b). To reach this determination we need look no further than the Supreme Court's decision in Leocal v. Ashcroft, where the Court explained:

> [Section] 16 relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime. The classic example is burglary. A burglary would be covered under § 16(b) not because the offense can be committed in a generally reckless way or because someone

10

may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.

543 U.S. 1, 10 (2004) (footnote and emphasis omitted).

The Supreme Court of California has similarly recognized that first-degree burglary creates a substantial risk that use of physical force may result:

Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.

People v. Montoya, 874 P.2d 903, 911-12 (Cal. 1994) (internal quotation marks omitted); see also United States v. Becker, 919 F.2d 568, 571 (9th Cir. 1990) ("The California courts have held that first degree burglary is burglary of a residence—a distinct and more serious offense than other burglaries."), superseded in part by statute as stated in, United States v. Ramos-Medina, 706 F.3d 932, 936-39 (9th Cir. 2012).

Given the inherent risks associated with burglary of a dwelling, courts have come to the conclusion (unanimous, so far as we can tell) that first-degree burglary under California law

11

is indeed a crime of violence under 18 U.S.C. § 16(b). See, e.g., Lopez-Cardona v. Holder, 662 F.3d 1110, 1112 (9th Cir. 2011); United States v. Echeverria-Gomez, 627 F.3d 971, 976 (5th Cir. 2010). We agree.

Avila argues that the Supreme Court's decision in Descamps dictates a contrary conclusion. We disagree. As relevant to the case at bar, Descamps held only that a conviction for burglary under California law does not categorically constitute a conviction for generic burglary, and thus cannot qualify as a predicate offense under the Armed Career Criminal Act ("ACCA") provision that references the generic crime. 133 S. Ct. at 2293. That is not the issue in this case. Here, using a completely different statutory scheme, we are asked to determine whether a conviction for first-degree burglary under California law constitutes a crime of violence for purposes of 18 U.S.C. § 16(b), which does not fall under the ACCA.

Unlike the ACCA provision analyzed in Descamps, 18 U.S.C. § 16(b) does not contain a roster of enumerated offenses or list generic burglary as a qualifying crime. Instead, § 16(b) speaks in descriptive terms of felonies that carry a substantial risk that force will be used. Consequently, the crime of violence definition in § 16(b) is not restricted to generic burglary, and Descamps is inapplicable to our analysis. See Becker, 919 F.2d at 572 (recognizing the California crime of burglary might not

12

be a "violent felony" under the ACCA, which defines the term by reference to the generic crime, but it is a "crime of violence" under the risk-focused text of 18 U.S.C. § 16). Indeed, in Descamps itself the Supreme Court explicitly limited its holding to that specific provision in the ACCA referencing generic burglary. 133 S. Ct. at 2293 n.6 (declining to address whether California burglary qualifies as a predicate offense under the ACCA's residual clause); see also United States v. Rodriguez-Frias, 571 F. App'x 536, 537 (9th Cir. 2014) (unpublished) (noting that Descamps has no bearing on "the definition of violence in the residual clause contained in § 16(b)").

Avila further asserts that California burglary does not satisfy the crime of violence definition because the statute "lacks the element of an unlawful or unprivileged entry." (Appellant's Br. 10.) This argument is without merit because the absence of this element does not dissipate the risks associated with burglary of an inhabited dwelling. California courts have repeatedly emphasized the potentially violent nature of first-degree burglary notwithstanding the absence of forced entry. See People v. Davis, 958 P.2d 1083, 1088-89 (Cal. 1998). Likewise, as noted by the Supreme Court, the "main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar

and a third party[.]" James v. United States, 550 U.S. 192, 203 (2007). Succinctly stated, burglary of a dwelling presents a substantial risk of force with or without an unlawful entry. See United States v. Maldonado, 696 F.3d 1095, 1103 (10th Cir. 2012) ("[A] risk of violence arises, even absent an unlawful entry, when a victim or third-party discovers the burglar's criminal intent. The burglar may initiate violence to carry out his crime, or a victim or third party may use force to resist or prevent it." (emphasis added)); United States v. Park, 649 F.3d 1175, 1178-79 (9th Cir. 2011) (noting that in determining whether first-degree burglary under California law involves conduct that presents a serious potential risk of physical injury to another, "[i]t makes no difference . . . that California first-degree burglary does not require an unlawful entry").

Finally, we reject Avila's contention that first-degree burglary under California law does not qualify as a crime of violence because it encompasses crimes "includ[ing] shoplifting and theft of goods from a locked but unoccupied automobile." (Appellant's Br. 10.) First, this argument mistakenly assumes that the above examples fall under California's statutory scheme for first-degree burglary. As noted, first-degree burglary requires entry into an inhabited dwelling. Neither of the above illustrations satisfy this requirement. In any event,

14

every set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." James, 550 U.S. at 208. As long as an offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b). See id. First-degree burglary under California law fulfills that requirement.

First-degree burglary, as defined in California Penal Code §§ 459 and 460(a), is a crime of violence within the meaning of 18 U.S.C. § 16(b) and therefore qualifies as an aggravated felony. Accordingly, the district court correctly applied the eight-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C) when it calculated Avila's sentence.

B.

We now turn to Avila's argument that the district court's sentencing colloquy was procedurally inadequate. Contrary to Avila's assertion otherwise, the district court's explanation of its sentence was more than sufficient to preclude a finding of error. A sentencing court must "'state in open court' the

15

particular reasons that support its chosen sentence." United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009). The court's explanation, however, need not be exhaustive; it merely must be "sufficient 'to satisfy the appellate court that [the district court] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority.'" United States v. Boulware, 604 F.3d 832, 837 (4th Cir. 2010) (alterations in original) (quoting Rita v. United States, 551 U.S. 338, 356 (2007)). Here, the district court explained that it had considered Avila's "history and characteristics," and "taken together, these indicate a concern . . . on the part of the Court for the safety of the public. And that is the driving reason for the sentence." (J.A. 25.) Although the district court's explanation focused on two of the sentencing factors, its discussion of Avila's history and characteristics and the need to protect the public from further crimes was individualized as to Avila and based on the facts presented. See United States v. Johnson, 445 F.3d 339, 345 (4th Cir. 2006) ("Requiring district courts to address each factor on the record would thus be an exercise in unproductive repetition that would invite flyspecking on appeal.").

We similarly reject Avila's argument that the district court erred by failing to address his "non-frivolous argument for a below-guidelines sentence." (Appellant's Br. 13.) Avila

16

fails altogether to explain in his brief what non-frivolous arguments the district court neglected to consider. Looking at the sentencing transcript, however, it is apparent that his request for a downward variance was based almost exclusively on his personal history and characteristics; topics which the district court made clear that it had considered. We thus find no abuse of discretion by the district court.[3]

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[3] Avila raises no separate argument as to the substantive reasonableness of his sentence and we find no abuse of discretion in his within-guidelines sentence.