CALLAHAN, Circuit Judge,
dissenting:
Contrary to the majority’s perspective, the Supreme Court’s opinion in Johnson v. United States, — U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), does not infect 18 U.S.C. § 16(b) — or other statutes — with unconstitutional vagueness. Rather, the Supreme Court carefully explained that the statute there in issue, a provision of the Armed Career Criminal Act (ACCA), 18-U.S.C. § 924(e)(2)(B), is unconstitutionally vague for two specific reasons: the clause (1) “leaves grave uncertainty about how to estimate the risk posed by a crime”; and (2) “leaves uncertainty about how much risk it takes for a crime to qualify as a violent crime.” Id. at 2557-58. In contrast, § 16(b), as it has been interpreted by the Supreme Court and the Ninth Circuit, has neither of these shortcomings. The majority’s contrary conclusion fails to appreciate the purpose of § 16(b), elevates the Supreme Court’s reference to “ordinary cases” from an example to a rule, and ignores the Court’s statement that it was not calling other statutes into question (which explains why the Court did not even mention Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004)). Accordingly, I dissent.
Our criminal and immigration laws are not as simple as the majority opinion implies. Accordingly, I first describe the purpose of § 16 and how courts have interpreted the statute, before reviewing the Supreme Court’s decision in Johnson, and concluding that the twin concerns expressed by the Supreme Court in Johnson do not infect § 16(b).
I.
Title 18 U.S.C. § 16 contains two distinct definitions of “crime of violence,” with distinct purposes, effects, and judicial pedigrees. Subsection (a) defines “crime of violence” as “an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.” (emphasis added). Subsection (b) sets forth a distinct definition that covers offenses that *1121 are not within subsection (a)’s definition. It states that “crime of violence” means “any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” It follows that an offense that is a “crime of violence” under subsection (a) also meets the criteria in subsection (b), but that subsection (b) covers offenses that do not meet the criteria in subsection (a). These subsections serve different functions with different consequences.
An appreciation of the differences between the subsections and their roles informs my understanding of the Supreme Court’s opinions in Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), and Moncrieffe v. Holder, — U.S. -, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013). Although the terms “crime of violence,” “violent felony,” and “aggravated felonies” may appear to be synonymous to a lay person, courts have recognized that, as used in their statutory contexts, they are distinct terms .of art covering distinct acts with different legal consequences.
A.
In Descamps, the Government sought an enhancement of Descamps’ sentence under the ACCA, 18 U.S.C. § 924(e), on the basis that his California conviction for burglary was a “violent felony.”[1] Descamps, 133 S.Ct. at 2281-82. In Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court had established a “rule .for determining when a defendant’s prior conviction counts as one of ACCA’s enumerated predicate offenses.” Descamps, 133 S.Ct. at 2283. In other words, Taylor focused on whether the state crime and the enumerated federal predicate offense had the same elements. In Taylor, the Court first determined the federal definition of burglary, and then considered How courts were to determine whether a state conviction met that definition.[2] The Court, concerned with the substantive and practical problems of determining that the state conviction met the criteria for a federal offense, set forth a “categorical approach” instructing sentencing courts to look at the statutory definitions and not to the particular facts underlying a conviction.[3] Descamps, 133 S.Ct. at 2283 (citing Taylor, 495 U.S. at 600, 110 S.Ct. 2143).
*1122 In Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the Court had established the “modified categorical approach,” which allows a sentencing court to scrutinize a restricted set of materials to determine whether a state conviction matches the generic federal offense. The Supreme Court later explained in Descamps that the modified categorical approach was a tool “to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense.”[4] 133 S.Ct. at 2285. The Court reiterated that its “elements-centric” approach was based on three grounds: (1) “it comports with ACCA’s test and history”; (2) “it avoids the Sixth Amendment concerns that would arise from sentencing courts making findings of fact that properly belong to juries”; and (3) “it averts the practical difficulties and potential unfairness of a factual approach.” Id. at 2287 (internal citation omitted).
Similar concerns with fairness underlie the Supreme Court’s opinion in Moncrieffe, 133 S.Ct. 1678. The Court stated that it granted certiorari “to resolve a conflict among the Courts of Appeals with respect to whether a conviction under a statute that criminalizes conduct described by both [21 U.S.C.] § 841’s felony provision and its misdemeanor provision, such as a statute that punishes all marijuana distribution without regard to the amount or remuneration, is a conviction for an offense that ‘proscribes conduct punishable as a felony under’ the CSA [Controlled Substance Act].” Id. at 1684. This, in turn, required a determination of whether the state conviction qualified as an “aggravated felony” under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.[5] Id. The Court, accordingly, applied the categorical approach “to determine whether the state offense is comparable to an offense listed in the INA.” Id. It explained that in order to satisfy the categorical approach, the state drug offense “must ‘necessarily’ proscribe conduct that is an offense under the CSA, and the CSA must ‘necessarily’ prescribe felony punishment for that offense.” Id. at 1685. The Court concluded that Moncrieffe’s state conviction failed to meet this standard, and accordingly, he was not convicted of an aggravated felony. Id. at 1687.
In both Descamps and Moncrieffe, the critical inquiry was whether the underlying state criminal conviction fit within a generic federal definition of a crime so that a defendant could be expected to have asserted all relevant defenses in his state trial. The underlying concerns had been set forth by the Supreme Court in Shepard:
Developments in the law since Taylor, and since the First Circuit’s decision in [United States v.] Harris [964 F.2d 1234 (1st Cir.1992) ], provide a further reason to adhere to the demanding requirement *1123 that any sentence under the ACCA rest on a showing that a prior conviction “necessarily” involved (and a prior plea necessarily admitted) facts equating to generic burglary. The Taylor Court, indeed, was prescient in its discussion of problems that would follow from allowing a broader evidentiary enquiry. “If the sentencing court were to conclude, from its own review of the record, that the defendant [who was convicted under a nongeneric burglary statute] actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial?” 495 U.S. at 601, 110 S.Ct. 2143. The Court thus anticipated the very rule later imposed for the sake of preserving the Sixth Amendment right, that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant. Jones v. United States, 526 U.S. 227, 243, n. 6 [119 S.Ct. 1215, 143 L.Ed.2d 311] (1999); see also Apprendi v. New Jersey, 530 U.S. 466, 490 [120 S.Ct. 2348, 147 L.Ed.2d 435] (2000).
544 U.S. at 24, 125 S.Ct. 1254 (alteration in original). Thus, for purposes such as sentencing under the ACCA, a state conviction is only an aggravated felony under § 16(a) if the court can fairly conclude that the conviction included all the elements of a federal offense.
B.
While 18 U.S.C. § 16(a) looks to whether the state conviction contained the elements of a federal offense, the Supreme Court and the circuit courts have recognized that § 16(b) asks a different question vrith different parameters and consequences. In Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, a unanimous Court held that a Florida conviction for driving under the influence of alcohol was not a crime of violence under § 16(a) or § 16(b). Id. at 4, 125 S.Ct. 377. The opinion describes § 16(b) as follows:
Section 16(b) sweeps more broadly than § 16(a), defining a crime of violence as including “any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” But § 16(b) does not thereby encompass all negligent misconduct, such as the negligent operation of a vehicle. It simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense_The classic example is burglary. A burglary would be covered under § 16(b) not because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.
543 U.S. at 10, 125 S.Ct. 377 (footnote omitted). Thus, when applying § 16(b), courts do not ask whether the state conviction contained the elements of a federal offense, but whether there was a “risk that the use of physical force against another might be required in committing” the state crime. 18 U.S.C. § 16(b).
We most recently recognized this distinct treatment of § 16(b) in Rodriguez-Castellon v. Holder, 733 F.3d 847 (9th Cir.2013). In this opinion, rendered after the Supreme Court issued its decision in Descamps, we explained:
Under 18 U.S.C. § 16, the phrase “crime of violence” has two meanings. First, under § 16(a), a state crime of conviction is a crime of violence if it “has as an element the use, attempted use, or threatened use of physical force against the person or property of another.” ... *1124 Second, even if the state crime does not include one of the elements listed in § 16(a), it is a “crime of violence” under § 16(b) if it is: (i) a felony; and (ii) “by its nature, involves a substantial risk that physical force against-the person or property of another may be used in the course of committing the offense.” 18 U.S.C. § 16(b). The Supreme Court has explained that § 16(b) criminalizes conduct that “naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense.” Leocal v. Ashcroft, 548 U.S. 1, 10, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004).
733 F.3d at 853-54.
Our holding in Rodriguez-Castellon is consistent with our prior opinions recognizing that first-degree burglary under California Penal Code § 459 remains an “aggravated felony” under § 16(b) even if the state crime did not include an element of the federal crime and thus was not an “aggravated felony” under § 16(a). See United States v. Ramos-Medina, 706 F.3d 932, 937-38 (9th Cir.2013).
In Chuen Pin Kwong v. Holder, 671 F.3d 872 (9th Cir.2011), we explained:
The question for decision, then, is whether Kwong’s [burglary] offense “by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of [its commission].” 18 U.S.C. § 16(b).
We answered that question in the affirmative some time ago in United States v. Becker, 919 F.2d 568, 573 (9th Cir.1990), where we held that “first-degree burglary under California law is a ‘crime of violence’ ” as defined by 18 U.S.C. § 16(b). See also United States v. Park, 649 F.3d 1175, 1178-79 (9th Cir.2011). We pointed out in Becker that “[a]ny time a burglar enters a dwelling with felonious or larcenous intent there is a risk that in the course of committing the crime he will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal purpose or to escape apprehension.” 919 F.2d at 571 (footnote omitted).[6]
Id. at 878.
Similarly, in United States v. Avila, 770 F.3d 1100, 1105 (4th Cir.2014), the Fourth Circuit concluded that “California first-degree burglary qualifies as a crime of violence under the residual clause of 18 U.S.C. § 16(b).” It held that it need look no further than the Supreme Court’s opinion in Leocal, 543 U.S. at 10, 125 S.Ct. 377, in concluding that burglary was the classic example of an offense covered by § 16(b).
Thus, the Supreme Court, our prior decisions, and .the Fourth Circuit, all recognize that the inquiries under § 16(a) and *1125 § 16(b) are distinct, and that even though a state conviction for burglary may not include an element of a generic federal offense, as required to come within § 16(a), a burglary conviction nonetheless involves a substantial risk of physical force, and thus is covered by § 16(b).
II.
Having set forth the scope of § 16(b) and the courts’ treatment of the section, I turn to the Supreme Court’s opinion in Johnson.
A.
The Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984 violates the Constitution’s guarantee of due process.[7] The Court concluded “that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges.” Johnson, 135 S.Ct. at 2557. The Court concluded that two features of the residual clause “conspire to make it unconstitutional.” Id. at 2557. “In the first place, the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime. It ties judicial assessment of risk to a judicially imagined ‘ordinary case’ of a crime, not to real-world facts or statutory elements.” Id. Second, “the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony.” Id. at 2558.
By asking whether the crime “otherwise involves conduct that presents a serious potential risk,” moreover, the residual clause forces courts to interpret “serious potential risk” in light of the four enumerated crimes — burglary, arson, extortion, and crimes involving the use of explosives. These offenses are “far from clear in respect' to the degree of risk each poses.” Begay [v. United States ], 553 U.S. [137] 143 [128 S.Ct. 1581, 170 L.Ed.2d 490 (2008)].... By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates.
Id. at 2558.
The Court then reviewed its prior efforts to establish a standard and concluded that “James, Chambers, and Sykes failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition.”[8] Id. at 2559. The Court further noted that in the lower courts, the residual clause has created numerous splits and the clause has proved nearly impossible to apply consistently.[9] Id. at 2560. The Court concluded that *1126 “[n]ine years’ experience trying to derive meaning from the residual clause convinces us that we have embarked on a failed enterprise.” Id.
The Court stated, in rejecting the argument that because there may be straightforward cases under the residual clause, the clause is not constitutionally vague:
The Government and the dissent next point out that dozens of federal and state criminal laws use terms like “substantial risk,” “grave risk,” and “unreasonable risk,” suggesting that to hold the residual clause unconstitutional is to place these provisions in constitutional doubt. See post, at 2558-2559. Not at all. Almost none of the cited laws links a phrase such as “substantial risk” to a confusing list of examples. “The phrase ‘shades of red,’ standing alone, does not generate confusion or unpredictability; but the phrase ‘fire-engine red, light pink, maroon, navy blue, or colors that otherwise involve shades of red’ assuredly does so.” James, 550 U.S., at 230, n. 7, 127 S.Ct. 1586, (Scalia, J., dissenting). More importantly, almost all of the cited laws require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion. As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as “substantial risk” to real-world conduct; “the law is full of instances where a man’s fate depends on his estimating rightly ... some matter of degree,” Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 57 L.Ed. 1232 (1913). The residual clause, however, requires application of the “serious potential risk” standard to an idealized ordinary case of the crime. Because “the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect,” this abstract inquiry offers significantly less predictability than one “[t]hat deals with the actual, not with an imaginary condition other than the facts.” Int. Harvester Co. of Am. v. Kentucky, 234 U.S. 216, 223, 34 S.Ct. 853, 58 L.Ed. 1284 (1914).
Id. at 2561.
The Court also declined the dissent’s invitation “to save the residual clause from vagueness by interpreting it to refer to the risk posed by the particular conduct in which the defendant engaged, not the risk posed by the ordinary case of the defendant’s crime.” Id. at 2562. It explained:
In the first place, the Government has not asked us to abandon the categorical approach in residual-clause cases. In addition, Taylor had good reasons to adopt the categorical approach, reasons that apply no less to the residual clause than to the enumerated crimes. Taylor explained that the relevant part of the Armed Career Criminal Act “refers to ‘a person who ... has three previous convictions’ for — not a person who has committed' — -three previous violent felonies or drug offenses.” 495 U.S. at 600, 110 S.Ct. 2143. This emphasis on convictions indicates that “Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.” Ibid. Taylor also pointed out the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction.
Id. at 2562.
Finally, the opinion’s penultimate paragraph reads:
We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution’s guarantee of due process. Our contrary holdings in James and Sykes are overruled. Today’s decision *1127 does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act’s definition of a violent felony.
Id. at 2563.
B.
I read Johnson as setting forth a two-part test: whether the statute in issue (1) “leaves grave uncertainty about how to estimate the risk posed by the crime”; and (2) “leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony.” Id. at 2557-58. Applying this test, the Court faulted the residual clause for requiring potential risk to be determined in light of “four enumerated crimes — burglary, arson, extortion, and crimes involving the use of explosives ... [which] are far from clear in respect to the degree of risk each poses.” Id. at 2558 (internal citation omitted). The Court’s concern was clarified by its reference to a prior dissent by Justice Scalia: “The phrase ‘shades of red,’ standing alone does not generate confusion or unpredictability; but the phrase ‘fire-engine red, light pink, maroon, navy blue or colors that otherwise involve shades of red’ assuredly does so.” Id. at 2561.
The Court also faulted the ■ residual clause for tying “the judicial assessment of risk to a judicially imagined ‘ordinary case’ of a crime, not to real-world facts or statutory elements.” Id. at 2557. However, the Court specifically stated that it was not abandoning the categorical approach, which, as noted, looks to the “ordinary case.” See Descamps, 133 S.Ct. at 2285 (holding the categorical approach’s central feature is “a focus on the elements, rather than the facts, of a crime”). It is true that Descamps, like § 16(a), looks to the elements of a crime, not to the potential risk from the crime. Nonetheless, in declining the dissent’s suggestion that it “jettison for the residual clause ... the categorical approach,” the Court recognized that there were “good reasons to adopt the categorical approach,” one of which is “the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction.” Johnson, 135 S.Ct. at 2562. Thus, Johnson does not prohibit all use of the “ordinary case.” It only prohibits uses that leave uncertain both how to estimate the risk and amount of risk necessary to qualify as a violent crime.
Indeed, such an interpretation seems compelled in light of the fact that Johnson did not even mention Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377. In Leocal, the Supreme Court recognized the breadth of § 16(b) and noted that it “simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing the offense.” Id. at 10, 125 S.Ct. 377.
Finally, I note that perhaps in an attempt to foreclose approaches such as that offered by today’s majority in this appeal, the Supreme Court concluded by stating that its decision “does not call into question application of the Act to the four enumerated offenses [which include burglary] or the remainder of the Act’s definition of a violent felony.” Johnson, 135 S.Ct. at 2563.
III.
After such an esoteric discussion, it would be easy to lose sight of what is at issue in this case. Dimaya, a native and citizen of the Philippines, was twice convicted of first-degree residential burglary under California Penal Code § 459 and sentenced each time to two years in prison. The Department of Homeland Security charged Dimaya with being removable because he had been convicted of an aggravated felony under 8 »U.S.C. § 1101(a)(43)(F), which is a “crime of violence ... for which the term of imprison *1128 ment [was] at least one year.” That statute in turn defines “crime of violence” by reference to 18 U.S.C. § 16. Thus, we are asked whether the statutory scheme is somehow so vague or ambiguous as to preclude the BIA from concluding that Dimaya’s two first-degree burglaries under California law are “crimes of violence” under § 16(b). Supreme Court precedent and our case law answer the question in the negative.
There is no uncertainty as to how to estimate the risk posed by Dimaya’s burglary crimes. The Supreme Court held in Leocal that § 16(b) “covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense.” 543 U.S. at 10, 125 S.Ct. 377. The court emphasized that burglary as “the classic example” of a crime covered by 16(b) because “burglary, by its nature involves a substantial risk that the burglar will use force against a victim in completing the crime.” [10] Id. See also Taylor, 495 U.S. at 599, 110 S.Ct. 2143 (a person has been convicted of a crime for sentencing enhancement “if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime”).
We have consistently followed this line of reasoning. See United States v. Becker, 919 F.2d 568, 571 (9th Cir.1990) (“Any time a burglar enters a dwelling with felonious or larcenous intent there is a risk that in the course of committing the crime he will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal purpose or to escape apprehension.”); Lopez-Cardona v. Holder, 662 F.3d 1110, 1113 (9th Cir.2011) (noting that “Becker itself recognized that the California crime of burglary might not be a ‘crime of violence’ under a federal statute defining the term by reference to the generic crime, even though it is a ‘crime of violence’ under the risk-focused text of § 16(b)”); Chuen Pin Kwong, 671 F.3d at 877 (reaffirming that “first-degree burglary under [CaLPenal Code] § 459 is a crime of violence because it involves a substantial risk that physical force may be used in the course of committing the offense.”).
Nor is there any uncertainty as to “how much risk it takes for a crime to qualify as a violent felony,” Johnson, 135 S.Ct. at 2558, when burglary is at issue. Section 16(b) itself requires a “substantial risk” of the use of physical force. As noted, neither the Supreme Court nor the Ninth Circuit has had any trouble in applying this standard. See Leocal, 543 U.S. at 10, 125 S.Ct. 377; Chuen Pin Kwong, 671 F.3d at 877; Becker, 919 F.2d at 571. Any person intent on committing a burglary inherently contemplates the risk of using force should his nefarious scheme be detected. Is this not what the Supreme Court was referring to when it noted “we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as ‘substantial risk’ to real-world conduct”? Johnson, 135 S.Ct. at 2561.[11]
*1129 IV.
In Johnson, after nine years of trying to derive meaning from the residual clause, the Supreme Court held that it was unconstitutionally vague. Section 16(b) is not the ACCA’s residual clause; nor has its standard proven to be unworkably vague. Over a decade ago, the Supreme Court in Leocal held that § 16(b) “covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense.” 543 U.S. at 10, 125 S.Ct. 377. Moreover, as the Supreme Court recognized, the statute sets forth the test of a “substantial risk that physical force against the person or property of any may be used in the course of committing the offense.” 18 U.S.C. § lé(b). Certainly, there is no unconstitutional vagueness in this case, which involves the hallmark “crime of violence,” burglary. See Leocal, 543 U.S. at 10, 125 S.Ct. 377. The Supreme Court will be surprised to learn that its opinion in Johnson rendered § 16(b) unconstitutionally vague, particularly as its opinion did not even mention Leocal and specifically concluded with the statement limiting its potential scope.[12] I fear that we have again ventured where no court has gone before and that the Supreme Court will have to intervene to return us to our proper orbit. Accordingly, I dissent.

. The statute, 18 U.S.C. § 924(e)(2)(B), reads, in relevant part:
the term "violent felony” means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
(i) has as an element the use, attempted use, or threatened usé of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

. In Taylor, the Court stated: “[w]e conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.” 495 U.S. at 599, 110 S.Ct. 2143.

.In Taylor, the Supreme Court noted:
Our present concern is only to determine what offenses should count as "burglaries” for enhancement purposes. The Government remains free to argue that any offense — including offenses similar to generic burglary — should count towards enhancement as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another” under § 924(e)(2)(B)(ii).
495 U.S. at 600 n. 9, 110 S.Ct. 2143.

. The Supreme Court explained:
The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach’s central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach’s basic method: comparing those elements with the generic offense’s. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates "several different ... crimes.” Nijhawan [v. Holder], 557 U.S. [29] 41 [129 S.Ct. 2294, 174 L.Ed.2d 22 (2009) ]. If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of.
Descamps, 133 S.Ct. at 2285.

. The INA provides that an alien "convicted of an aggravated felony” is removable, § 1227; is not eligible for asylum, § 1158(b)(2)(a)(ii); and is not eligible for cancellation of removal or adjustment of status, § 1229b(a)(3).

. In response to Kwong's argument that California’s definition of first-degree burglary is broader than the generic federal definition, the Ninth Circuit held:
These arguments are foreclosed, however, by our recent decision in Lopez-Cardona v. Holder, 662 F.3d 1110 (9th Cir.2011). Lopez-Cardona flatly held that, under Becker, first-degree burglary in violation of California Penal Code § 459 was a crime of violence within the meaning of 18 U.S.C. § 16(b). Id. at 1113. It also held that Aguila-Montes had no effect on that conclusion because Aguila-Montes was based on a different definition of "crime of violencé”; Aguila-Montes held only that a conviction under California Penal Code § 459 did not constitute a conviction for generic burglary. Lopez-Cardona, 662 F.3d at 1113. Aguila-Montes accordingly did not contradict or affect Becker’s holding that first-degree burglary under § 459 is a crime of violence because it involves a substantial risk that physical force may be used in the course of committing the offense. Id. at 1111-12.
671 F.3d at 877-78.

. The residual clause of the ACCA increased the prison term of a defendant who had been convicted of "any crime punishable by imprisonment for a term exceeding one year” that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B).

. James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007); Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009); and Sykes v. United States, 564 U.S. 1, 131 S.Ct. 2267, 180 L.Ed.2d 60(2011).

.The Court commented;
The most telling feature of the lower courts’ decisions is not division about whether the residual clause covers this or that crime (even clear laws produce close cases); it is, rather, pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider.
Id. at 2560.

. This statement from Leocal forecloses, for purposes of § 16(b), attempts to distinguish burglary convictions based on statutes that cover structures other than dwellings or do not require unlawful entry. Neither of these distinctions change the "nature” of the offense nor ameliorates the "substantial risk that the burglar will use force against a victim in completing the crime.”

. I am not alone in questioning the application of Johnson beyond the ACCA’s residual clause. Although the opinion has only been on the books for a little over three months, the Eighth Circuit in Ortiz v. Lynch, 796 F.3d 932, 935 n. 2 (8th Cir.2015), noted that Johnson "does not implicate the analysis in this case where the analogous language comes not from the residual clause, but the first defini *1129 tion of violent felony’ in ACCA.” Similarly, in In re Gieswein, 802 F.3d 1143, No. 15-6138, 2015 WL 5534388 (10th Cir. Sept. 21, 2015), the Tenth Circuit noted that the holding in Johnson applies only to the residual-clause definition of violent felony. Although it did not reach the merits of the issue, the court noted that the "surviving definition of 'violent felony’ under the ACCA includes a felony conviction for ‘burglary.’ ” Id. at n. 2.

. There can be no doubt as to the majority’s intent. Footnote 14 of the majority opinion asserts that "all of our prior cases relating to which offenses fall within the scope of [§ 16(b) ] are to that extent of no further force or effect.”