**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES GARCIA DIMAYA, *Petitioner*, | No. 11-71307 |
| v. | Agency No. A043-888-256 |
| LORETTA E. LYNCH, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
September 1, 2015—Pasadena, California

Filed October 19, 2015

Before: Stephen Reinhardt, Kim McLane Wardlaw,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge Callahan

## SUMMARY[*]

### Immigration

The panel granted James Garcia Dimaya's petition for review of the Board of Immigration Appeals' decision holding that his conviction for burglary under California Penal Code § 459 is a categorical "crime of violence" as defined by 8 U.S.C. § 1101(a)(43)(F).

Reaffirming that a noncitizen may bring a void for vagueness challenge to the definition of a crime of violence in the Immigration and Nationality Act, the panel held that the language in 18 U.S.C. § 16(b), which is incorporated into § 1101(a)(43)(F)'s definition of a crime of violence, is unconstitutionally vague. The panel held that § 16(b)'s language suffers from the same indeterminacy the Supreme Court found in the Armed Career Criminal Act's "residual clause" definition of a violent felony in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

Dissenting, Judge Callahan would find that 18 U.S.C. § 16(b) is not unconstitutionally vague pursuant to *Johnson*.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Andrew M. Knapp (argued), Southwestern Law School, Los Angeles, California, for Petitioner.

Nancy Canter (argued) and Jennifer Khouri, Trial Attorneys; Stuart F. Delery, Assistant Attorney General; Jennifer P. Levings, Senior Litigation Counsel, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

Sejal Zota (argued), National Immigration Project of the National Lawyers Guild, Boston, Massachusetts, for Amici Curiae Immigrant Legal Resource Center, Immigrant Defense Project, and National Immigration Project of the National Lawyers Guild.

**OPINION**

REINHARDT, Circuit Judge:

Petitioner James Garcia Dimaya seeks review of the Board of Immigration Appeals' (BIA) determination that a conviction for burglary under California Penal Code Section 459 is categorically a "crime of violence" as defined by 8 U.S.C. § 1101(a)(43)(F), a determination which rendered petitioner removable for having been convicted of an aggravated felony. During the pendency of petitioner's appeal, the United States Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the Armed Career Criminal Act's ("ACCA") so-called "residual clause" definition of a "violent felony" is unconstitutionally vague. In this case, we consider whether language similar to ACCA's residual clause that is incorporated into

§ 1101(a)(43)(F)'s definition of a crime of violence is also void for vagueness.  We hold that it suffers from the same indeterminacy as ACCA's residual clause and, accordingly, grant the petition for review.

# I

Petitioner, a native and citizen of the Philippines, was admitted to the United States in 1992 as a lawful permanent resident.  In both 2007 and 2009, petitioner was convicted of first-degree residential burglary under California Penal Code section 459 and sentenced each time to two years in prison. If a non-citizen is convicted of an aggravated felony, he is subject to removal.  8 U.S.C. § 1227(a)(2)(A)(iii).  Citing petitioner's two first-degree burglary convictions, the Department of Homeland Security ("DHS") charged that petitioner was removable because he had been convicted of a "crime of violence . . . for which the term of imprisonment [was] at least one year"—an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).[1]  That statute defines a "crime of violence" by reference to 18 U.S.C. § 16, which provides the following definition:

---

[1] DHS also charged that petitioner was removable for having committed two crimes of moral turpitude, *see* 8 U.S.C. § 1227(a)(2)(A)(ii), and for having committed a "theft offense . . . or burglary offense for which the term of imprisonment [was] at least one year"—an aggravated felony under 8 U.S.C. § 1101(a)(43)(G).  Although the Immigration Judge (IJ) agreed with DHS that petitioner was removable on either of these two grounds, the Board of Immigration Appeals (BIA) dismissed petitioner's appeal on the sole ground that he was removable for having committed a crime of violence under 8 U.S.C. § 1101(a)(43)(F).  Therefore, whether the relevant definition of a "crime of violence" is constitutional is the only issue we reach.

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Immigration Judge (IJ) agreed with DHS that first-degree burglary in California is a crime of violence. Citing § 16(b) and *United States v. Becker*, 919 F.2d 568, 573 (9th Cir. 1990), the IJ explained that "unlawful entry into a residence is by its very nature an offense where is apt to be violence [sic], whether in the efforts of the felon to escape or in the efforts of the occupant to resist the felon." Because the charging documents for each conviction alleged an unlawful entry, and because the term of imprisonment for each conviction was greater than one year, the IJ determined that these convictions were crimes of violence. On the basis of this conclusion, the IJ held that petitioner was removable and ineligible for any relief. The BIA dismissed petitioner's appeal on the same ground. Citing § 16(b) and *Becker*, the BIA concluded that "[e]ntering a dwelling with intent to commit a felony is an offense that by its nature carries a substantial risk of the use of force," and therefore affirmed the IJ's holding that petitioner was convicted of a crime of violence.[2]

---

[2] Notwithstanding the fact that the BIA appeared to consider only the petitioner's 2007 conviction, the government argues in this case that both of petitioner's first-degree burglary convictions are crimes of violence

Petitioner filed a timely petition with this Court for review of the BIA's decision.  After the parties argued this case, the United States Supreme Court decided *Johnson* and, because the definition of a crime of violence that the BIA relied on in this case is similar to the unconstitutional language in ACCA's residual clause,[3] we ordered supplemental briefing and held a supplemental oral argument regarding whether § 16(b), as incorporated into the INA, is also unconstitutionally vague.  We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review questions of law, including whether language in the immigration statutes is void for vagueness.  *See Alphonsus v. Holder*, 705 F.3d 1031, 1036–37 (9th Cir. 2013).  That question, as a pure question of law, receives *de novo* review from this Court.  *Aguilar-Ramos v. Holder*, 594 F.3d 701, 704 (9th Cir. 2010).

## II

The Fifth Amendment's Due Process Clause "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Alphonsus*, 705 F.3d at 1042 (quoting *Kolender v. Lawson*, 461 U.S. 352,

---

under 18 U.S.C. § 16(b).  This discrepancy is immaterial, as the same analysis applies to both convictions.

[3] The subsection of ACCA that includes the residual clause defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*."  18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).  As the Court noted in *Johnson*, the italicized words of this definition are known as the residual clause.  135 S. Ct. at 2555–56.

357 (1983)).  Although most often invoked in the context of criminal statutes, the prohibition on vagueness also applies to civil statutes, including those concerning the criteria for deportation. *Jordan v. De George*, 341 U.S. 223, 231 (1951) ("Despite the fact that this is not a criminal statute, we shall nevertheless examine the application of the vagueness doctrine to this case.  We do this in view of the grave nature of deportation."); *see also A.B. Small Co. v. Am. Sugar Ref. Co.*, 267 U.S. 233, 239 (1925) ("The defendant attempts to distinguish [prior vagueness] cases because they were criminal prosecutions.  But that is not an adequate distinction.  The ground or principle of the decisions was not such as to be applicable only to criminal prosecutions.").

Previously, we have recognized the vagueness doctrine's applicability in the context of withholding of removal "because of the harsh consequences attached to . . . denial of withholding of removal." *Alphonsus*, 705 F.3d at 1042 (citing *Jordan*, 341 U.S. at 230–31).  In this case, Petitioner challenges a statute as unconstitutionally vague in the context of denial of cancellation of removal.

For due process purposes, this context is highly analogous to denial of withholding of removal because both pose the harsh consequence of almost certain deportation.  Under withholding of removal, a non-citizen who is otherwise removable cannot be deported to his home country if he establishes that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).  Under cancellation of removal, immigration authorities may cancel the removal of a lawful permanent resident who satisfies certain criteria based on length of residency, good behavior, and exceptional hardship.

*Id.* § 1229b(b)(1). Non-citizens who commit certain criminal offenses are ineligible for these forms of relief. *See id.* §§ 1231(b)(3)(B)(ii), 1229b(b)(1)(C). As with denial of withholding of removal, then, denial of cancellation of removal renders an alien ineligible for relief, making deportation "a virtual certainty." *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011).

The government argues that our circuit's reliance on *Jordan* "is misguided as *Jordan* did not authorize vagueness challenges to deportation statutes." We find this suggestion baffling. *Jordan* considered whether the term "crime involving moral turpitude" in section 19(a) of the Immigration Act of 1917, a type of offense that allowed for a non-citizen to "be taken into custody and *deported*," was void for vagueness. 341 U.S. at 225–31 (emphasis added). In considering this challenge, the Court explicitly rejected the argument that the vagueness doctrine did not apply. *Id.* at 231. The government also argues that subsequent Supreme Court decisions rejected due process challenges to various immigration statutes. *See Marcello v. Bonds*, 349 U.S. 302, 314 (1955); *Galvan v. Press*, 347 U.S. 522, 530–31 (1954); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–91 (1952). None of these cases, however, suggests that the Due Process Clause does not apply to deportation proceedings. Nor could they, for it "is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (internal quotation marks omitted).

As the Supreme Court recognized in *Jordan*, a necessary component of a non-citizen's right to due process of law is the prohibition on vague deportation statutes. Recently, the Supreme Court noted the need for "efficiency, fairness, and

predictability in the administration of immigration law." *Mellouli v. Lynch*, 135 S. Ct. 1980, 1987 (2015). Vague immigration statutes significantly undermine these interests by impairing non-citizens' ability to "anticipate the immigration consequences of guilty pleas in criminal court." *Id.* (internal quotation marks omitted); *see also Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) ("[A]ccurate legal advice for noncitizens accused of crimes has never been more important" because "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." (footnote omitted)). For these reasons, we reaffirm that petitioner may bring a void for vagueness challenge to the definition of a "crime of violence" in the INA.[4]

## III

To understand *Johnson*'s effect on this case, it is helpful to view §16(b), as incorporated into the INA, alongside the residual clause at issue in *Johnson*. The INA provides for the removal of non-citizens who have been "convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Its definition of an aggravated felony includes numerous offenses, including "a crime of violence (as defined in section 16 of Title 18 . . . )." 8 U.S.C. § 1101(a)(43)(F). The sub-section of 18 U.S.C. § 16 that the BIA relied on in this case defines a crime of violence as an "offense that is a felony and

---

[4] Several other Circuit Courts of Appeals have also entertained void for vagueness challenges to immigration statutes. *See Mhaidli v. Holder*, 381 Fed. App'x 521, 525–26 (6th Cir. 2010) (unpublished); *Arriaga v. Mukasey*, 521 F.3d 219, 222 (2d Cir. 2008); *Garcia-Meza v. Mukasey*, 516 F.3d 535, 536 (7th Cir. 2008).

that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Had Congress written out the relevant definition in full instead of relying on cross-referencing, a lawful permanent resident would be removable if "convicted of an offense that is a felony and that, by its nature, *involves a substantial risk that physical force against the person or property of another may be used* in the course of committing the offense" (emphasis added). The language in ACCA that *Johnson* held unconstitutional is similar. The ACCA provision defined a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year [i.e., a felony] . . . that . . . *involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). Importantly, both the provision at issue here and ACCA's residual clause are subject to the same mode of analysis. Both are subject to the categorical approach, which demands that courts "look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime."[5] *Leocal v.*

---

[5] Although it is largely irrelevant for the purposes of this case, the dissent's characterization of the categorical approach is incorrect. The dissent correctly explains that categorical approach cases such as *Descamps v. United States*, 133 S. Ct. 2276 (2013), *Shepard v. United States*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990) hold that a state conviction must include all elements of the equivalent federal generic offense to qualify as a violent felony. The dissent then goes on to assert, incorrectly, that those cases, which deal with ACCA, shed light on how to interpret § 16(a). *Taylor*, *Shepard*, and *Descamps* tell us nothing about § 16(a), however, because they do not interpret § 924(e)(2)(B)(i)—the subsection of ACCA with language identical to § 16(a). Instead, those cases consider a different subsection—the list of *enumerated felonies* that appears in § 924(e)(2)(B)(ii), of which burglary is one. *See Descamps*, 133 S. Ct. at

*Ashcroft*, 543 U.S. 1, 7 (2004). Specifically, courts considering both § 16(b) and the residual clause must decide what a "'usual or ordinary' violation" of the statute entails and then determine how great a risk of injury that "ordinary case" presents. *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 854 (9th Cir. 2013) (quoting *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2012)).

In *Johnson*, the Supreme Court recognized two features of ACCA's residual clause that "conspire[d] to make it unconstitutionally vague." 135 S. Ct. at 2557. First, the Court explained, the clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves." *Id.* That is, the provision "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, the Court stated, ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates."[6] *Id.* On

---

2281; *Shepard*, 544 U.S. at 16–17; *Taylor*, 495 U.S. at 581–82. Because § 16 does not include any enumerated felonies in either subsection (a) or (b), those cases are inapplicable.

[6] The dissent essentially agrees with this reading except that it argues that *Johnson* "only prohibits uses [of § 16(b)] that leave uncertain both how to estimate the risk and amount of risk necessary to qualify as a violent crime." Nothing in *Johnson*, however, suggests that the Court considered the constitutionality of ACCA's residual clause in reference to the crime Johnson actually committed. To the contrary, the Court never discussed Johnson's predicate offense—unlawful possession of a short-

that ground it held the residual clause void for vagueness. The Court's reasoning applies with equal force to the similar statutory language and identical mode of analysis used to define a crime of violence for purposes of the INA. The result is that because of the same combination of indeterminate inquiries, § 16(b) is subject to identical unpredictability and arbitrariness as ACCA's residual clause. In sum, a careful analysis of the two sections, the one at issue here and the one at issue in *Johnson*, shows that they are subject to the same constitutional defects and that *Johnson* dictates that § 16(b) be held void for vagueness.

### A

In *Johnson*, the Supreme Court condemned ACCA's residual clause for asking judges "to imagine how the idealized ordinary case of the crime subsequently plays out." *Id*. at 2557–58. To illustrate its point, the Court asked rhetorically whether the "ordinary instance" of witness tampering involved "offering a witness a bribe" or instead "threatening a witness with violence." *Id.* at 2557; *see also id.* at 2558 (It is just as likely that "a violent encounter may ensue" during an attempted burglary as it is that "any confrontation that occurs . . . 'consist[s] of nothing more than the occupant's yelling "Who's there?" from his window, and the burglar's running away.'" (quoting *James v. United*

---

barreled shotgun—but instead held in absolute terms that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563. *Johnson* therefore clearly holds that the residual clause is unconstitutionally vague in all instances, not just for some subset of crimes.

*States*, 550 U.S. 192, 211 (2007), and *id.* at 226 (Scalia, J., dissenting))).[7]

As with ACCA's residual clause, the INA's crime of violence provision requires courts to "inquire whether 'the conduct encompassed by the elements of the offense, in the ordinary case, presents'" a substantial risk of force. *Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1128 (9th Cir. 2012) (quoting *James*, 550 U.S. at 208); *see also Rodriguez-Castellon*, 733 F.3d at 854. We see no reason why this aspect of *Johnson* would not apply here, and indeed the government concedes that it does. As with the residual clause, the INA's definition of a crime of violence at issue in this case offers "no reliable way to choose between these competing accounts" of what a crime looks like in the ordinary case. *Johnson*, 135 S. Ct. at 2558.

**B**

In many circumstances, of course, statutes require judges to apply standards that measure various degrees of risk. *See*

---

[7] "Does the ordinary burglar invade an occupied home by night or an unoccupied home by day?" *Johnson*, 135 S. Ct. at 2558. It seems that one arrives at a different answer about what the "ordinary case" of burglary involves whether one uses "[g]ut instinct" or "statistical analysis." *Id.* at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc)). Although many people surely imagine the possibility of a violent encounter when they picture burglary, recent government statistics show that only about seven percent of burglaries nationwide involved incidents of violence. Bureau of Justice Statistics, *National Crime Victimization Survey: Victimization During Household Burglaries* 1 (Sept. 2010), http://www.bjs.gov/content/pub/pdf/vdhb.pdf. Such statistics only highlight the arbitrary nature of this inquiry, even in the seemingly easy case of burglary.

Supplemental Brief for Respondent at 1a, *Johnson v. United States*, 135 S. Ct. 2551 (2015) (No. 13-7120) (cataloguing federal statutes). The vast majority of those statutes pose no vagueness problems because they "call for the application of a qualitative standard such as 'substantial risk' to real-world conduct."[8] *Johnson*, 135 S. Ct. at 2561. The statute at issue in *Johnson* was not one of those statutes, however. Nor is the provision at issue here. If the uncertainty involved in describing the "ordinary case" of a crime was not enough, its combination with the uncertainty in determining the degree of risk was. ACCA's violent felony definition requires judges to apply "an imprecise 'serious potential risk'[9]

---

[8] The dissent argues that any "person intent on committing a burglary inherently contemplates the risk of using force should his nefarious scheme be detected" and then asks "Is this not what the Supreme Court was referring to when it noted 'we do not doubt the constitutionality of laws that call for application of a qualitative standard such as "substantial risk" to real-world conduct?'" Dissent at 41 (quoting *Johnson*, 135 S. Ct. at 2561). Plainly not. As the dissent's use of the word "inherently" proves, the dissent's argument does not rest on the facts of an actual burglary but instead on the dissent's conception of burglary in the ordinary case. A statute that allowed courts to evaluate the record to determine whether a defendant actually engaged in violence would fall within the language the dissent cites. However, as the Supreme Court has repeatedly made clear, when applying the categorical approach that ACCA and § 16(b) demand, courts must consider "what offense the noncitizen was 'convicted of' . . . not what acts he committed." *Moncrieffe*, 133 S. Ct. at 1678.

[9] ACCA's residual clause required courts to evaluate whether an offense posed "a serious potential risk" while the relevant INA definition asks whether an offense poses "a substantial risk." *Compare* 18 U.S.C. § 924(e)(2)(B)(ii), *with id.* § 16(b). Measuring whether an offense poses a "substantial" risk, however, is no less arbitrary than measuring whether it poses a "serious potential" one, and the government offers no suggestion to the contrary.

standard . . . to [the] judge-imagined abstraction" of a crime in the ordinary case. *Id.* at 2558. The same is equally true of the INA's definition of a crime of violence at issue here. Section 16(b) gives judges no more guidance than does the ACCA provision as to what constitutes a substantial enough risk of force to satisfy the statute. Accordingly, *Johnson*'s holding with respect to the imprecision of the serious potential risk standard is also clearly applicable to § 16(b). As with ACCA's residual clause, § 16(b)'s definition of a crime of violence, combines "indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as" a crime of violence.[10]  135 S. Ct. at 2558.

---

[10] At the supplemental oral argument, the government argued that two recent decisions from other circuit courts of appeals conflict with our holding in this case. *See Ortiz v. Lynch*, No. 14-2428, 2015 WL 4645869 (8th Cir. Aug. 6, 2015); *United States v. Fuertes*, No. 13-4755, 2015 WL 4910113 (4th Cir. Aug. 18, 2015). Neither case, however, is of any help to the government. The Eighth Circuit noted that *Ortiz* "does not implicate the analysis in" *Johnson* because, in *Ortiz*, the government argued that the petitioner's conviction qualified as a crime of violence under § 16(a), a completely different statutory definition. *Ortiz*, 2015 WL 464869 at *2 & n.2. Indeed § 16(a) is highly similar to analogous language in ACCA, 18 U.S.C. § 924(e)(2)(B)(i), that *Johnson* left untouched. 135 S. Ct. at 2563 ("Today's decision does not call into question . . . the remainder of the Act's definition of a violent felony."). *Fuertes* is of even less help, if possible. There, the Fourth Circuit held that it did not need to reach the question whether *Johnson* applied to language similar to § 16(b) that appears in 18 U.S.C. § 924(c)(3)(B) because, in any case, the defendant's offense did not satisfy the statutory language in question. *See Fuertes*, 2015 WL 4910113 at *9–10 & 9 n.5. Finally, the dissent cites *In re Gieswein*, No. 15-6138, 2015 WL 5534388 (10th Cir. Sept. 21, 2015), in which the Tenth Circuit noted that the "definition [that survived *Johnson*] of 'violent felony' under the ACCA includes a felony conviction for 'burglary.'" *Id.* at *2 n.2. Yes, but only because the portion of ACCA that survived includes a list of four

## C

Notwithstanding the undeniable identity of the constitutional defects in the two statutory provisions, the government and dissent offer several unpersuasive arguments in an attempt to save the INA provision at issue in this case. First, the government and dissent argue that the Supreme Court found ACCA's standard to be arbitrary in part because the residual clause "force[d] courts to interpret 'serious potential risk' in light of the four enumerated crimes" in the provision,[11] crimes which are "far from clear in respect to the degree of risk each poses." *Id.* (quoting *Begay v. United States*, 553 U.S 137, 143 (2008) (internal quotation marks omitted)). It is true that, after the Court set forth its holding in *Johnson*, it cited the provision's four enumerated offenses in responding to the government's argument that the Court's holding would cast doubt on the many criminal statutes that include language similar to the indeterminate term "serious potential risk." *Id.* at 2561. In doing so, however, it stated that while the listed offenses added to the uncertainty, the fundamental reason for the Court's holding was the residual clause's "application of the 'serious potential risk' standard

---

enumerated felonies, of which burglary is one. That, after *Johnson*, ACCA continues to cover burglary through one of its enumerated offenses says nothing about whether § 16(b) can be constitutionally applied to burglary or any other offense.

[11] The relevant provision of ACCA defined a "violent felony" as any felony that is "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). As noted above in footnote 3, the "residual clause" is defined as the portion of provision that follows "explosives."

to an idealized ordinary case of the crime."**[12]** *Id.* In short, this response clearly reiterated that what distinguishes ACCA's residual clause from many other provisions in criminal statutes was, consistent with its fundamental holding, the use of the "ordinary case" analysis. *Johnson* therefore made plain that the residual clause was void for vagueness in and of itself for the reasons stated in reaching its decision, and not because of the clause's relation to the four listed offenses.**[13]**

Next, the government argues that ACCA's residual clause requires courts to consider the risk that would arise after completion of the offense, *see Johnson*, 135 S. Ct. at 2557, and that § 16(b) applies only to violence occurring "in the course of committing the offense," 18 U.S.C. § 16(b). First, we doubt that this phrase actually creates a distinction between the two clauses. For example, we have consistently held that California's burglary statute (the very statute at issue in this case) is a crime of violence for the purposes of the INA precisely because of the risk that violence will ensue

---

**[12]** The Solicitor General's brief in *Johnson* also recognized that because section 16(b), as applied in the INA, "requires a court to identify the ordinary case of the commission of the offense," it is "equally susceptible to [Johnson's] central objection to the residual clause." Supplemental Brief for Respondent at 22–23, *Johnson v. United States*, 135 S. Ct. 2551 (2015) (No. 13-7120).

**[13]** Although *Johnson* concluded that the enumerated offenses added to the residual clause's indeterminacy, it could well be argued that, if anything, § 16(b) is more vague than the residual clause because of its lack of enumerated examples. To be sure, ACCA's enumerated examples are "far from clear in respect to the degree of risk each poses." *Johnson*, 135 S. Ct. at 2558. However, they provide at least *some* guidance as to the sort of offenses Congress intended for the provision to cover. Section 16(b), by contrast, provide no such guidance at all.

after the defendant has committed the acts necessary to constitute the offense. *Lopez-Cardona v. Holder*, 662 F.3d 1110, 1112 (9th Cir. 2011) (describing the risk that a burglar "will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal purpose or to escape apprehension" (quoting *Becker*, 919 F.2d at 571)).[14] By the time the risk of physical force against an occupant arises, however, the defendant has frequently already satisfied the elements of the offense of burglary under California law. *See* Cal. Penal Code § 459 (defining burglary as "enter[ing] any house, room, apartment, [etc.] . . . with intent to commit grand or petit larceny or any felony"). More important, even if such a distinction did exist, it would not save the INA's definition of a crime of violence from unconstitutionality. The Court, in *Johnson*, held ACCA's residual clause to be unconstitutionally vague because it combined the indeterminate inquiry of "how to measure the risk posed by a crime" in the ordinary case with "indeterminacy about how much risk it takes for the crime to qualify as a violent felony." 135 S. Ct. at 2558. This reasoning applies equally whether the inquiry considers the risk of violence posed by the commission and the aftereffects of a crime, or whether it is limited to consideration of the risk

---

[14] In holding that burglary under California law constituted a crime of violence in *Lopez-Cardona*, we were not asked to consider the question of § 16(b)'s constitutionality; nor did we do so. For the same reason, the dissent's lengthy discussion of this court's prior holdings regarding burglary and § 16(b) is irrelevant. Here, we do not consider what offenses fall within § 16(b) but instead whether the provision may be constitutionally applied. That latter question is answered here and, as a result, all of our prior cases relating to which offenses fall within the scope of that provision are to that extent of no further force or effect.

of violence posed by acts necessary to satisfy the elements of the offense.[15]

The government also argues that § 16(b) has not generated the same degree of confusion among courts that ACCA's residual clause generated. It notes that, in contrast to the five residual clause cases that the Supreme Court has decided in addition to *Johnson*, the Court has decided only a single case interpreting section 16(b). *See Leocal*, 543 U.S. at 10–11. That the Supreme Court has decided more residual clause cases than § 16(b) cases, however, does not indicate that it believes the latter clause to be any more capable of consistent application. We can discern very little regarding

---

[15] The government also suggested at the supplemental oral argument that our decision in this case would require holding that *Johnson* overruled *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which stated in dicta that burglary is the "classic example" of an offense that would satisfy § 16(b). *Id.* at 10. The dissent now adopts a related argument: that this statement from *Leocal* proves that "there is no unconstitutional vagueness in this case." Dissent at 42. In deciding whether the offense of "driving under the influence of alcohol . . . and causing serious bodily injury" qualified as a crime of violence, however, *Leocal* said nothing about whether the statutory language in § 16(b) is void for vagueness. Moreover, *Johnson* casts doubt on the notion that burglary could easily be characterized as a crime that involves a substantial risk of violence under § 16(b). *See* 135 S. Ct. at 2557 ("The act of . . . breaking and entering into someone's home does not, in and of itself, normally cause physical injury."). Finally, even if there were some "straightforward cases" or categories of cases under § 16(b), *Johnson* squarely rejected the argument that "a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp," *id.* at 2561–62, and clearly stated that the residual clause was void for vagueness in all applications, *id.* at 2563. There is therefore no need in this opinion to consider the continued validity of the statement in *Leocal* cited by the government and dissent.

the merits of an issue from the composition of the Supreme Court's docket.  The Court has

> repeatedly indicated that a denial of certiorari means only that, for one reason or another which is seldom disclosed, and not infrequently for conflicting reasons which may have nothing to do with the merits and certainly may have nothing to do with any view of the merits taken by a majority of the Court, there were not four members of the Court who thought the case should be heard.

*Daniels v. Allen*, 344 U.S. 443, 492 (1953); *see also Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 365 n.1 (1973) (describing the "well-settled view that denial of certiorari imparts no implication or inference concerning the Court's view of the merits").  Moreover, the Supreme Court in recent years has decided substantially more federal criminal appeals than immigration appeals.  The Court's history of deciding ACCA residual clause cases in greater numbers than INA crime of violence cases is thus consistent with its greater interest in federal criminal cases than in immigration cases.  In fact, over this period the ratio of federal criminal cases to immigration cases significantly exceeds the ratio of ACCA residual clause cases to INA crime of violence cases on which the government relies.[16]

---

[16] During the nine terms preceding the 2015 term, the Supreme Court decided a total of 85 federal criminal appeals versus only 12 immigration appeals.  These statistics come from the Harvard Law Review, which compiles statistics each year after the completion of the Supreme Court term.  Every version of "The Statistics" includes a table that records the number of cases decided each year by "subject matter."  They are available at http://harvardlawreview.org/category/statistics/.

## IV

In *Johnson*, the Supreme Court held that ACCA's residual clause "produces more unpredictability and arbitrariness than the Due Process Clause tolerates" by "combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony." 135 S. Ct. at 2558. Although the government can point to a couple of minor distinctions between the text of the residual clause and that of the INA's definition of a crime of violence, none undermines the applicability of *Johnson*'s fundamental holding to this case. As with ACCA, section 16(b) (as incorporated in 8 U.S.C. §1101(a)(43)(F)) requires courts to 1) measure the risk by an indeterminate standard of a "judicially imagined 'ordinary case,'" not by real world-facts or statutory elements and 2) determine by vague and uncertain standards when a risk is sufficiently substantial. Together, under *Johnson*, these uncertainties render the INA provision unconstitutionally vague.[17]

We **GRANT** the petition for review and **REMAND** to the BIA for further proceedings consistent with this opinion.

---

[17] Our decision does not reach the constitutionality of applications of 18 U.S.C. § 16(b) outside of 8 U.S.C. §1101(a)(43)(F) or cast any doubt on the constitutionality of 18 U.S.C. § 16(a)'s definition of a crime of violence.

CALLAHAN, Circuit Judge, dissenting:

Contrary to the majority's perspective, the Supreme Court's opinion in *Johnson v. United States*, 135 S. Ct. 2551 (2015), does not infect 18 U.S.C. § 16(b) —or other statutes—with unconstitutional vagueness. Rather, the Supreme Court carefully explained that the statute there in issue, a provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), is unconstitutionally vague for two specific reasons: the clause (1) "leaves grave uncertainty about how to estimate the risk posed by a crime"; and (2) "leaves uncertainty about how much risk it takes for a crime to qualify as a violent crime." *Id*. at 2557–58. In contrast, §16(b), as it has been interpreted by the Supreme Court and the Ninth Circuit, has neither of these shortcomings. The majority's contrary conclusion fails to appreciate the purpose of § 16(b), elevates the Supreme Court's reference to "ordinary cases" from an example to a rule, and ignores the Court's statement that it was not calling other statutes into question (which explains why the Court did not even mention *Leocal v. Ashcraft*, 543 U.S. 1 (2004)). Accordingly, I dissent.

Our criminal and immigration laws are not as simple as the majority opinion implies. Accordingly, I first describe the purpose of § 16 and how courts have interpreted the statute, before reviewing the Supreme Court's decision in *Johnson*, and concluding that the twin concerns expressed by the Supreme Court in *Johnson* do not infect § 16(b).

## I.

Title 18 U.S.C. § 16 contains two distinct definitions of "crime of violence," with distinct purposes, effects, and

judicial pedigrees. Subsection (a) defines "crime of violence" as "an offense that has as an *element* the use, attempted use, or threatened use of physical force against the person or property of another." (emphasis added). Subsection (b) sets forth a distinct definition that covers offenses that are not within subsection (a)'s definition. It states that "crime of violence" means "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." It follows that an offense that is a "crime of violence" under subsection (a) also meets the criteria in subsection (b), but that subsection (b) covers offenses that do not meet the criteria in subsection (a). These subsections serve different functions with different consequences.

An appreciation of the differences between the subsections and their roles informs my understanding of the Supreme Court's opinions in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). Although the terms "crime of violence," "violent felony," and "aggravated felonies" may appear to be synonymous to a lay person, courts have recognized that, as used in their statutory contexts, they are distinct terms of art covering distinct acts with different legal consequences.

## A.

In *Descamps*, the Government sought an enhancement of Descamps' sentence under the ACCA, 18 U.S.C. § 924(e), on the basis that his California conviction for burglary was a

"violent felony."[1]  *Descamps*, 133 S. Ct. at 2281–82.  In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court had established a "rule for determining when a defendant's prior conviction counts as one of ACCA's enumerated predicate offenses."  *Descamps*, 133 S. Ct. at 2283.  In other words, *Taylor* focused on whether the state crime and the enumerated federal predicate offense had the same elements.  In *Taylor*, the Court first determined the federal definition of burglary, and then considered how courts were to determine whether a state conviction met that definition.[2]  The Court, concerned with the substantive and practical problems of determining that the state conviction met the criteria for a federal offense, set forth a "categorical approach" instructing sentencing courts to look at the

---

[1] The statute, 18 U.S.C. § 924(e)(2)(B), reads, in relevant part:

> the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that–

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

[2] In *Taylor*, the Court stated: "[w]e conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  495 U.S. at 599.

statutory definitions and not to the particular facts underlying a conviction.[3] *Descamps*, 133 S. Ct. at 2283 (citing *Taylor*, 495 U.S. at 600).

In *Shepard v United States*, 544 U.S. 13 (2005), the Court had established the "modified categorical approach," which allows a sentencing court to scrutinize a restricted set of materials to determine whether a state conviction matches the generic federal offense. The Supreme Court later explained in *Descamps* that the modified categorical approach was a tool "to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense."[4] 133 S. Ct. at 2285. The Court reiterated that its

---

[3] In *Taylor*, the Supreme Court noted:

> Our present concern is only to determine what offenses should count as "burglaries" for enhancement purposes. The Government remains free to argue that any offense—including offenses similar to generic burglary—should count towards enhancement as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another" under § 924(e)(2)(B)(ii).

495 U.S. at 600 n.9.

[4] The Supreme Court explained:

> The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative

"elements-centric" approach was based on three grounds: (1) "it comports with ACCA's test and history"; (2) "it avoids the Sixth Amendment concerns that would arise from sentencing courts making findings of fact that properly belong to juries"; and (3) "it averts the practical difficulties and potential unfairness of a factual approach." *Id.* at 2287 (internal citation omitted).

Similar concerns with fairness underlie the Supreme Court's opinion in *Moncrieffe*, 133 S. Ct. 1678. The Court stated that it granted certiorari "to resolve a conflict among the Courts of Appeals with respect to whether a conviction under a statute that criminalizes conduct described by both [21 U.S.C.] § 841's felony provision and its misdemeanor provision, such as a statute that punishes all marijuana distribution without regard to the amount or remuneration, is a conviction for an offense that 'proscribes conduct punishable as a felony under' the CSA [Controlled Substance Act]." *Id.* at 1684. This, in turn, required a determination of whether the state conviction qualified as an "aggravated felony" under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.[5] *Id.* The Court, accordingly, applied

elements, and so effectively creates "several different . . . crimes." *Nijhawan* [*v. Holder*], 557 U.S. [29] 41 [(2009)]. If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of.

*Descamps*, 133 S. Ct. at 2285.

[5] The INA provides that an alien "convicted of an aggravated felony" is removable, § 1227; is not eligible for asylum, § 1158(b)(2)(a)(ii); and is not eligible for cancellation of removal or adjustment of status, § 1229b(a)(3).

the categorical approach "to determine whether the state offense is comparable to an offense listed in the INA." *Id*. It explained that in order to satisfy the categorical approach, the state drug offense "must 'necessarily' proscribe conduct that is an offense under the CSA, and the CSA must 'necessarily' prescribe felony punishment for that offense." *Id*. at 1685. The Court concluded that Moncrieffe's state conviction failed to meet this standard, and accordingly, he was not convicted of an aggravated felony. *Id.* at 1687.

In both *Descamps* and *Moncrieffe,* the critical inquiry was whether the underlying state criminal conviction fit within a generic federal definition of a crime so that a defendant could be expected to have asserted all relevant defenses in his state trial. The underlying concerns had been set forth by the Supreme Court in *Shepard*:

> Developments in the law since *Taylor*, and since the First Circuit's decision in *Harris*, provide a further reason to adhere to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction "necessarily" involved (and a prior plea necessarily admitted) facts equating to generic burglary. The *Taylor* Court, indeed, was prescient in its discussion of problems that would follow from allowing a broader evidentiary enquiry. "If the sentencing court were to conclude, from its own review of the record, that the defendant [who was convicted under a nongeneric burglary statute] actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury

> trial?" 495 U.S. at 601. The Court thus anticipated the very rule later imposed for the sake of preserving the Sixth Amendment right, that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant. *Jones v. United States*, 526 U.S. 227, 243, n. 6 (1999); see also *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

544 U.S. at 24 (alteration in original). Thus, for purposes such as sentencing under the ACCA, a state conviction is only an aggravated felony under § 16(a) if the court can fairly conclude that the conviction included all the elements of a federal offense.

### B.

While 18 U.S.C. § 16(a) looks to whether the state conviction contained the elements of a federal offense, the Supreme Court and the circuit courts have recognized that § 16(b) asks a different question with different parameters and consequences. In *Leocal v. Ashcroft*, 543 U.S. 1, a unanimous Court held that a Florida conviction for driving under the influence of alcohol was not a crime of violence under § 16(a) or § 16(b). *Id*. at 4. The opinion describes § 16(b) as follows:

> Section 16(b) sweeps more broadly than § 16(a), defining a crime of violence as including "any other offense that is a felony and that, by its nature, involves a substantial

risk that physical force against the person or property of another may be used in the course of committing the offense." But § 16(b) does not thereby encompass all negligent misconduct, such as the negligent operation of a vehicle. It simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. . . . The classic example is burglary. A burglary would be covered under § 16(b) not because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.

543 U.S. at 10 (footnote omitted). Thus, when applying § 16(b), courts do not ask whether the state conviction contained the elements of a federal offense, but whether there was a "risk that the use of physical force against another might be required in committing" the state crime. 18 U.S.C. § 16(b).

We most recently recognized this distinct treatment of § 16(b) in *Rodriguez-Castellon v. Holder*, 733 F.3d 847 (9th Cir. 2013). In this opinion, rendered after the Supreme Court issued its decision in *Descamps*, we explained:

Under 18 U.S.C. § 16, the phrase "crime of violence" has two meanings. First, under § 16(a), a state crime of conviction is a crime of violence if it "has as an element the use,

attempted use, or threatened use of physical force against the person or property of another." . . . Second, even if the state crime does not include one of the elements listed in § 16(a), it is a "crime of violence" under § 16(b) if it is: (I) a felony; and (ii) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The Supreme Court has explained that § 16(b) criminalizes conduct that "naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004).

733 F.3d at 853–54.

Our holding in *Rodriguez-Castellon* is consistent with our prior opinions recognizing that first-degree burglary under California Penal Code § 459 remains an "aggravated felony" under § 16(b) even if the state crime did not include an element of the federal crime and thus was not an "aggravated felony" under § 16(a). *See United States v. Ramos-Medina*, 706 F.3d 932, 937–38 (9th Cir. 2013).

In *Chuen Piu Kwong v. Holder*, 671 F.3d 872 (9th Cir. 2011), we explained:

The question for decision, then, is whether Kwong's [burglary] offense "by its nature, involves a substantial risk that physical force against the person or property of another may

be used in the course of [its commission]."
18 U.S.C. § 16(b).

We answered that question in the affirmative
some time ago in *United States v. Becker,*
919 F.2d 568, 573 (9th Cir. 1990), where we
held that "first-degree burglary under
California law is a 'crime of violence'" as
defined by 18 U.S.C. § 16(b). *See also United
States v. Park*, 649 F.3d 1175, 1178–79 (9th
Cir. 2011). We pointed out in *Becker* that
"[a]ny time a burglar enters a dwelling with
felonious or larcenous intent there is a risk
that in the course of committing the crime he
will encounter one of its lawful occupants,
and use physical force against that occupant
either to accomplish his illegal purpose or to
escape apprehension." 919 F.2d at 571
(footnote omitted).[6]

---

[6] In response to Kwong's argument that California's definition of first-
degree burglary is broader than the generic federal definition, the Ninth
Circuit held:

> These arguments are foreclosed, however, by our recent
> decision in *Lopez–Cardona v. Holder*, 662 F.3d 1110
> (9th Cir. 2011). *Lopez–Cardona* flatly held that, under
> *Becker*, first-degree burglary in violation of California
> Penal Code § 459 was a crime of violence within the
> meaning of 18 U.S.C. § 16(b). *Id*. at 1113. It also held
> that *Aguila–Montes* had no effect on that conclusion
> because *Aguila–Montes* was based on a different
> definition of "crime of violence"; *Aguila–Montes* held
> only that a conviction under California Penal Code
> § 459 did not constitute a conviction for generic
> burglary. *Lopez–Cardona*, 662 F.3d at 1113.

*Id*. at 878.

Similarly, in *United States v. Avila*, 770 F.3d 1100, 1105 (4th Cir. 2014), the Fourth Circuit concluded that "California first-degree burglary qualifies as a crime of violence under the residual clause of 18 U.S.C. § 16(b)." It held that it need look no further than the Supreme Court's opinion in *Leocal*, 543 U.S. at 10, in concluding that burglary was the classic example of an offense covered by § 16(b).

Thus, the Supreme Court, our prior decisions, and the Fourth Circuit, all recognize that the inquiries under § 16(a) and § 16(b) are distinct, and that even though a state conviction for burglary may not include an element of a generic federal offense, as required to come within § 16(a), a burglary conviction nonetheless involves a substantial risk of physical force, and thus is covered by § 16(b).

## II.

Having set forth the scope of § 16(b) and the courts' treatment of the section, I turn to the Supreme Court's opinion in *Johnson*.

---

*Aguila–Montes* accordingly did not contradict or affect *Becker*'s holding that first-degree burglary under § 459 is a crime of violence because it involves a substantial risk that physical force may be used in the course of committing the offense. *Id.* at 1111–12.

671 F.3d at 877–78.

## A.

The Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984 violates the Constitution's guarantee of due process.[7]  The Court concluded "that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson,* 135 S. Ct. at 2557.  The Court concluded that two features of the residual clause "conspire to make it unconstitutional." *Id*. at 2557. "In the first place, the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime.  It ties judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.*  Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558.

> By asking whether the crime "otherwise involves conduct that presents a serious potential risk," moreover, the residual clause forces courts to interpret "serious potential risk" in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives. These offenses are "far from clear in respect to the degree of risk each poses." *Begay* [*v. United*

---

[7] The residual clause of the ACCA increased the prison term of a defendant who had been convicted of "any crime punishable by imprisonment for a term exceeding one year" that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B).

> *States*], 553 U.S. [137] 143 [(2008)] . . . . By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates.

*Id*. at 2558.

The Court then reviewed its prior efforts to establish a standard and concluded that "*James, Chambers,* and *Sykes* failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition."[8]  *Id.* at 2559.  The Court further noted that in the lower courts, the residual clause has created numerous splits and the clause has proved nearly impossible to apply consistently.[9]  *Id*. at 2560.  The Court concluded that "[n]ine years' experience trying to

---

[8] *James v. United States*, 550 U.S. 192 (2007); *Chambers v. United States*, 555 U.S. 122 (2009); and *Sykes v. United States*, 131 S. Ct. 2267 (2011).

[9] The Court commented:

> The most telling feature of the lower courts' decisions is not division about whether the residual clause covers this or that crime (even clear laws produce close cases); it is, rather, pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider.

*Id*. at 2560.

derive meaning from the residual clause convinces us that we have embarked on a failed enterprise." *Id*.

The Court stated, in rejecting the argument that because there may be straightforward cases under the residual clause, the clause is not constitutionally vague:

> The Government and the dissent next point out that dozens of federal and state criminal laws use terms like "substantial risk," "grave risk," and "unreasonable risk," suggesting that to hold the residual clause unconstitutional is to place these provisions in constitutional doubt. *See post*, at 2558–2559. Not at all. Almost none of the cited laws links a phrase such as "substantial risk" to a confusing list of examples. "The phrase 'shades of red,' standing alone, does not generate confusion or unpredictability; but the phrase 'fire-engine red, light pink, maroon, navy blue, or colors that otherwise involve shades of red' assuredly does so." *James*, 550 U.S., at 230, n. 7, (Scalia, J., dissenting). More importantly, almost all of the cited laws require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion. As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; "the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree," *Nash v. United States*, 229 U.S. 373, 377

(1913).     The residual clause, however,
requires application of the "serious potential
risk" standard to an idealized ordinary case of
the crime.  Because "the elements necessary
to determine the imaginary ideal are uncertain
both in nature and degree of effect," this
abstract inquiry offers significantly less
predictability than one "[t]hat deals with the
actual, not with an imaginary condition other
than the facts." *Int. Harvester Co. of Am. v.
Kentucky*, 234 U.S. 216, 223 (1914).

*Id*. at 2561.

The Court also declined the dissent's invitation "to save
the residual clause from vagueness by interpreting it to refer
to the risk posed by the particular conduct in which the
defendant engaged, not the risk posed by the ordinary case of
the defendant's crime." *Id*. at 2562.  It explained:

In the first place, the Government has not
asked us to abandon the categorical approach
in residual-clause cases.  In addition, *Taylor*
had good reasons to adopt the categorical
approach, reasons that apply no less to the
residual clause than to the enumerated crimes.
*Taylor* explained that the relevant part of the
Armed Career Criminal Act "refers to 'a
person who . . . has three previous
convictions' for—not a person who has
committed—three previous violent felonies or
drug offenses."   495 U.S. at 600.   This
emphasis on convictions indicates that
"Congress intended the sentencing court to

look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Ibid*. *Taylor* also pointed out the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction.

*Id*. at 2562.

Finally, the opinion's penultimate paragraph reads:

We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. Our contrary holdings in *James* and *Sykes* are overruled. Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony.

*Id*. at 2563.

## B.

I read *Johnson* as setting forth a two-part test: whether the statute in issue (1) "leaves grave uncertainty about how to estimate the risk posed by the crime"; and (2) "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id*. at 2557–58. Applying this test, the Court faulted the residual clause for requiring

potential risk to be determined in light of "four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives . . . [which] are far from clear in respect to the degree of risk each poses." *Id.* at 2558 (internal citation omitted). The Court's concern was clarified by its reference to a prior dissent by Justice Scalia: "The phrase 'shades of red,' standing alone does not generate confusion or unpredictability; but the phrase 'fire-engine red, light pink, maroon, navy blue or colors that otherwise involve shades of red' assuredly does so." *Id.* at 2561.

The Court also faulted the residual clause for tying "the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id*. at 2557. However, the Court specifically stated that it was not abandoning the categorical approach, which, as noted, looks to the "ordinary case." *See Descamps*, 133 S. Ct. at 2285 (holding the categorical approach's central feature is "a focus on the elements, rather than the facts, of a crime"). It is true that *Descamps*, like § 16(a), looks to the elements of a crime, not to the potential risk from the crime. Nonetheless, in declining the dissent's suggestion that it "jettison for the residual clause . . . the categorical approach," the Court recognized that there were "good reasons to adopt the categorical approach," one of which is "the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction." *Johnson*, 135 S. Ct. at 2562. Thus, *Johnson* does not prohibit all use of the "ordinary case." It only prohibits uses that leave uncertain both how to estimate the risk and amount of risk necessary to qualify as a violent crime.

Indeed, such an interpretation seems compelled in light of the fact that *Johnson* did not even mention *Leocal v. Ashcroft*, 543 U.S. 1. In *Leocal*, the Supreme Court recognized the breadth of § 16(b) and noted that it "simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing the offense." *Id.* at 10.

Finally, I note that perhaps in an attempt to foreclose approaches such as that offered by today's majority in this appeal, the Supreme Court concluded by stating that its decision "does not call into question application of the Act to the four enumerated offenses [which include burglary] or the remainder of the Act's definition of a violent felony." *Johnson*, 135 S. Ct. at 2563.

## III.

After such an esoteric discussion, it would be easy to lose sight of what is at issue in this case. Dimaya, a native and citizen of the Philippines, was twice convicted of first-degree residential burglary under California Penal Code § 459 and sentenced each time to two years in prison. The Department of Homeland Security charged Dimaya with being removable because he had been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), which is a "crime of violence . . . for which the term of imprisonment [was] at least one year." That statute in turn defines "crime of violence" by reference to 18 U.S.C. § 16. Thus, we are asked whether the statutory scheme is somehow so vague or ambiguous as to preclude the BIA from concluding that Dimaya's two first-degree burglaries under California law are "crimes of violence" under § 16(b). Supreme Court precedent and our case law answer the question in the negative.

There is no uncertainty as to how to estimate the risk posed by Dimaya's burglary crimes. The Supreme Court held in *Leocal* that § 16(b) "covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." 543 U.S. at 10. The court emphasized that burglary as "the classic example" of a crime covered by 16(b) because "burglary, by its nature involves a substantial risk that the burglar will use force against a victim in completing the crime."[10] *Id. See also Taylor*, 495 U.S. at 599 (a person has been convicted of a crime for sentencing enhancement "if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime").

We have consistently followed this line of reasoning. *See United States v. Becker*, 919 F.2d 568, 571 (9th Cir. 1990) ("Any time a burglar enters a dwelling with felonious or larcenous intent there is a risk that in the course of committing the crime he will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal purpose or to escape apprehension."); *Lopez-Cardina v. Holder*, 662 F.3d 1110, 1113 (9th Cir. 2011) (noting that "*Becker* itself recognized that the California crime of burglary might not be a 'crime of violence' under a federal statute defining the term by

---

[10] This statement from *Leocal* forecloses, for purposes of § 16(b), attempts to distinguish burglary convictions based on statutes that cover structures other than dwellings or do not require unlawful entry. Neither of these distinctions change the "nature" of the offense nor ameliorates the "substantial risk that the burglar will use force against a victim in completing the crime."

reference to the generic crime, even though it is a 'crime of violence' under the risk-focused text of § 16(b)"); *Chuen Piu Kwong*, 671 F.3d at 877 (reaffirming that "first-degree burglary under [Cal. Penal Code] § 459 is a crime of violence because it involves a substantial risk that physical force may be used in the course of committing the offense.").

Nor is there any uncertainty as to "how much risk it takes for a crime to qualify as a violent felony," *Johnson*, 135 S. Ct. at 2558, when burglary is at issue. Section 16(b) itself requires a "substantial risk" of the use of physical force. As noted, neither the Supreme Court nor the Ninth Circuit has had any trouble in applying this standard. *See Leocal*, 543 U.S. at 10; *Chuen Piu Kwong*, 671 F.3d at 877; *Becker*, 919 F.2d at 571. Any person intent on committing a burglary inherently contemplates the risk of using force should his nefarious scheme be detected. Is this not what the Supreme Court was referring to when it noted "we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct"? *Johnson* 135 S. Ct. at 2561.[11]

---

[11] I am not alone in questioning the application of *Johnson* beyond the ACCA's residual clause. Although the opinion has only been on the books for a little over three months, the Eighth Circuit in *Ortiz v. Lynch*, 796 F.3d 932, 935 n.2 (8th Cir. 2015), noted that *Johnson* "does not implicate the analysis in this case where the analogous language comes not from the residual clause, but the first definition of 'violent felony' in ACCA." Similarly, in *In re Gieswein, ___ F.3d ___,* No. 15-6138, 2015 WL 5534388 (10th Cir. Sept. 21, 2015), the Tenth Circuit noted that the holding in *Johnson* applies only to the residual-clause definition of violent felony. Although it did not reach the merits of the issue, the court noted that the "surviving definition of 'violent felony' under the ACCA includes a felony conviction for 'burglary.'" *Id*. at n.2.

## IV.

In *Johnson*, after nine years of trying to derive meaning from the residual clause, the Supreme Court held that it was unconstitutionally vague. Section 16(b) is not the ACCA's residual clause; nor has its standard proven to be unworkably vague. Over a decade ago, the Supreme Court in *Leocal* held that § 16(b) "covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." 543 U.S. at 10. Moreover, as the Supreme Court recognized, the statute sets forth the test of a "substantial risk that physical force against the person or property of any may be used in the course of committing the offense." 18 U.S.C. § 16(b). Certainly, there is no unconstitutional vagueness in this case, which involves the hallmark "crime of violence," burglary. *See Leocal*, 543 U.S. at 10. The Supreme Court will be surprised to learn that its opinion in *Johnson* rendered § 16(b) unconstitutionally vague, particularly as its opinion did not even mention *Leocal* and specifically concluded with the statement limiting its potential scope.[12] I fear that we have again ventured where no court has gone before and that the Supreme Court will have to intervene to return us to our proper orbit. Accordingly, I dissent.

---

[12] There can be no doubt as to the majority's intent. Footnote 14 of the majority opinion asserts that "all of our prior cases relating to which offenses fall within the scope of [§ 16(b)] are to that extent of no further force or effect."